ARTHUR M. HOCH v. HERBERT C. YOUNG

No. 8210SC937

(Filed 2 August 1983)

1. **Trover and Conversion § 3— action for conversion of stock—statute of limitations**

The jury could properly find that defendant converted plaintiff's stock certificate when he refused to return the certificate to plaintiff in September 1980 rather than when he received the certificate in late 1976 or early 1977 and plaintiff learned that defendant had possession of his certificate where there was evidence that defendant lawfully came into possession of the certificate. Therefore, plaintiff's action for conversion of the certificate instituted on 9 October 1980 was not barred by the three-year statute of limitations of G.S. 1-52(4).

2. **Trover and Conversion § 4— conversion of stock—sufficient evidence of damages**

In an action to recover damages for conversion of stock in a closely-held corporation, plaintiff offered sufficient evidence of the value of the stock to overcome defendant's motion to dismiss, although there was no direct testimony as to the fair market value of the shares themselves, where there was substantial evidence as to the many factors affecting valuation, such as the fair market value of the corporation's assets, its income, expenses, dividends, and the value of plaintiff's interest.

APPEAL by defendant from *Lee* and *Battle, Judges.* Judgment entered 8 April 1982 in Superior Court, WAKE County. Heard in the Court of Appeals 9 June 1983.

This is a civil action wherein plaintiff, Arthur M. Hoch, seeks to recover from defendant Herbert C. Young the fair market value of ten (10) shares of stock in a closely-held corporation, known as Triangle Swim Club, Inc. which stock defendant allegedly converted.

The Triangle Swim Club, Inc. (hereinafter the Swim Club), shortly after its incorporation on 17 March 1970, issued thirty (30) shares of its capital stock as follows: ten (10) shares to plaintiff, ten (10) shares to defendant and defendant's wife, and ten (10) shares to Miriam Hudson. At the first trial of this action, plaintiff acknowledged that he resigned his position as officer of the Swim Club in a letter dated 13 June 1974, but testified he did not surrender possession of the stock certificate representing his ten shares of the stock in the corporation at that time.

At a later date in 1974, plaintiff gave his stock certificate endorsed in blank to Sam Hudson, who was a mutual friend of the parties and the bookkeeper for the Swim Club. Mr. Hudson acknowledged receipt of plaintiff's certificate with a letter dated 2 October 1974 in which he said:

> "This will acknowledge receipt of your stock certificate of Triangle Swim Club which I agree to hold in trust for you until such time as your dispute with Herb Young on how the pool will operate has been settled. Your signature will remain as it is and I await your instructions as to how it is to be eventually endorsed."

Plaintiff's certificate remained in Mr. Hudson's possession until the spring of 1977 when Mr. Hudson was imprisoned for embezzlement from his employer, First Citizens Bank and Trust Company. At some point in either late 1976 or early 1977, defendant informed plaintiff that he now had possession of plaintiff's certificate.

In September 1980, plaintiff demanded the return of his stock certificate from defendant. It became apparent defendant did not intend to comply with the demand, thus plaintiff instituted this suit on 9 October 1980. The matter first came on for trial on 11 January 1982 before Judge Thomas H. Lee. Defendant made a motion for a directed verdict at the close of plaintiff's evidence and again at the close of all the evidence. Both motions were denied. Three issues were submitted to the jury which were answered as follows:

1. Did the defendant convert the stock certificate of the plaintiff representing 10 shares of capital stock in Triangle Swim Club, Inc.?

ANSWER: Yes

2. Did the plaintiff commence this action before the expira-
tion of the three-year statute of limitations?

ANSWER: Yes

3. What amount of damages, if any, is the plaintiff entitled to
recover from the defendant?

ANSWER: (No answer)

Upon receipt of the foregoing verdict, the court declared a
mistrial as to the damage issue, denied defendant's alternative
motions for judgment notwithstanding the verdict or a new trial
on the first two issues, entered judgment for plaintiff on the first
two issues, and ordered a new trial as to the damage issue. Upon
retrial of the damage issue, the jury found plaintiff is entitled to
recover $13,000.00 from defendant. From the final judgment
entered 8 April 1982, defendant appealed.

*Harrell and Titus, by Bernard A. Harrell and Richard C.
Titus, for plaintiff appellee.*

*Poyner, Geraghty, Hartsfield and Townsend, by David W.
Long and Cecil W. Harrison, Jr., for defendant appellant.*

WEBB, Judge.

The question presented for review on this appeal is whether
the trial court, at the first trial of this matter, erred in failing to
grant defendant's motions for a directed verdict and judgment
notwithstanding the verdict.

Defendant offers the following two grounds in support of his
contention that the court erred in denying his motions: (1) plain-
tiff's own evidence established that his cause of action for conver-
sion was barred by the three-year statute of limitations set out in
G.S. 1-52(4), and (2) plaintiff failed to offer evidence as to the fair
market value of the converted stock as of the date of the conver-
sion. We do not agree and find no error in the court's denial of
defendant's motions.

[1] Defendant argues the statute of limitations began to run
when plaintiff learned in either late 1976 or early 1977 that de-
fendant had possession of plaintiff's stock certificate endorsed in

blank. If the statute of limitations had been triggered at that point, then plaintiff's action would be barred because it was not filed until over three years later on 9 October 1980. Plaintiff maintains the limitation period did not begin until September 1980, the date he made demand for the return of his stock certificate. We agree with plaintiff that there was sufficient evidence for the jury to find that the statute of limitations did not begin to run until September 1980.

There is no evidence that when defendant informed plaintiff that he had possession of the certificate, that he indicated any intention to retain the same against plaintiff's rights or to convert it to his own use. Rather, the conversation between the parties served only to notify plaintiff of the location of his certificate subsequent to the imprisonment of Mr. Hudson. Defendant testified that he "received Mr. Hoch's stock certificate in the mail. There was nothing with the certificate and I do not know who mailed it . . . ." Since it appears defendant came into possession of the certificate lawfully, the following applies:

> "Where there has been no wrongful taking or disposal of the goods, and the defendant has merely come rightfully into possession and then refused to surrender them, demand and refusal are necessary to the existence of the tort. When demand is made, and absolute, unqualified refusal to surrender, which puts the plaintiff to the necessity of force or a lawsuit to recover his own property, is of course a conversion."

Prosser, *The Law of Torts* 4th, § 15 at pp. 89-90 (1971).

Similarly, Dr. Robert E. Lee in his book *North Carolina Law of Personal Property* (1968), stated as follows at page 60:

> "The mere receipt of the possession of a chattel from a third person with an intent to acquire a proprietary interest therein constitutes a conversion without a demand for its return by the owner. The fact that the person in possession is without knowledge that the third person had no power to transfer a proprietary interest is immaterial. A subsequent refusal to surrender the chattel on demand may constitute a separate act of conversion. The owner may elect to treat the defendant as a converter either from the receipt of the chattel or from his refusal to deliver it on demand . . . ."

We hold that the jury could find that the defendant converted the stock on the date of the refusal to return the certificate.

[2]   With respect to defendant's contention that plaintiff failed to offer evidence at the first trial as to the fair market value of the converted stock at the time of conversion, we note that although there was no direct testimony as to the fair market value of the shares themselves, there was substantial evidence as to the many factors affecting valuation, such as the fair market value of the corporation's assets, its income, expenses, dividends, and the value of plaintiff's interest. Plaintiff introduced into evidence the balance sheets of the corporation, its income tax returns for the years 1970 through 1979, and its complete ledger book, which contained information about all the income, salaries, dividends, expenses, loans, and obligations of the Swim Club as well as all other matters relating to its financial status.

Plaintiff testified as to the cost of construction of the Swim Club, loans made to it, the size of its initial membership, and its financial success. Plaintiff and his expert witness both gave their opinions as to the fair market value of the corporation's assets prior to construction of a second pool in 1975. Defendant admitted at trial that in an earlier statement he had estimated the assets of the Swim Club to be at least $120,000.00. He further testified that prior to plaintiff's resignation in June 1974, plaintiff's interest was worth $35,000.00.

In our opinion, there was sufficient evidence of the value of the stock to overcome the motion to dismiss.

No error.

Judges ARNOLD and BRASWELL concur.