Wake County v. Hotels.com, LP, 2007 NCBC 35

| | |
|---|---|
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION |
| COUNTY OF WAKE | MASTER FILE NO: 06 CVS 16256 |
| WAKE COUNTY,<br><br>      Plaintiff,<br><br>    v.<br><br>HOTELS.COM, LP, *et al.,*<br><br>      Defendants. | **ORDER** |
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION |
| COUNTY OF BUNCOMBE | 07 CVS 585 |
| BUNCOMBE COUNTY,<br><br>      Plaintiff,<br><br>    v.<br><br>HOTELS.COM, LP, *et al.,*<br><br>      Defendants. | |
| STATE OF NORTH CAROLINA | IN THE GENERAL COURT OF JUSTICE<br>SUPERIOR COURT DIVISION |
| COUNTY OF DARE | 07 CVS 56 |
| DARE COUNTY,<br><br>      Plaintiff,<br><br>    v.<br><br>HOTELS.COM, LP, *et al.,*<br><br>      Defendants. | |

STATE OF NORTH CAROLINA

COUNTY OF CUMBERLAND

CUMBERLAND COUNTY,

Plaintiff,

v.

HOTELS.COM, LP, *et al.*,

Defendants.

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
06 CVS 10630

*The Shanahan Law Group by Reef C. Ivey, II and Kieran J. Shanahan for Plaintiffs Wake County and Cumberland County.*

*Long, Parker, Warren & Jones, P.A. by Scott W. Jones and Steven R. Warren for Plaintiff Buncombe County.*

*Ward & Smith, P.A. by Hugh R. Overholt and Gary J. Rickner for Plaintiff Dare County.*

*Williams Mullen Maupin Taylor, P.A. by Charles B. Neely, Jr., Nancy S. Rendleman, and Robert W. Shaw for Defendants Hotels.com; Hotels.com, LP; Hotels.com GP, LLC; Hotwire, Inc.; Trip Network, Inc., d/b/a Cheap Tickets.com; Travelport Inc., f/k/a Cendant Travel Distribution Services Group, Inc.; Expedia, Inc; Internetwork Publishing Corp., d/b/a Lodging.com; Lowestfare.com, Incorporated; Maupin-Tour Holding, LLC; Orbitz, Inc.; Orbitz, LLC; Priceline.com, Incorporated; Priceline.com, LLC; Site59.com, LLC; Travelocity.com, Inc; Travelocity.com, LP; Travelweb, Inc.; Travelweb LLC; Travelnow.com, Inc.; Cheap Tickets, Inc.; and Sabre, Inc.*

*Skadden, Arps, Slate, Meagher & Flom LLP by Darrel J. Hieber, Karen L. Valihura, Celso M. Gonzalez-Falla, and Michael A. Barlow for Defendants Priceline.com, Incorporated; Lowestfare.com, Incorporated; and Travelweb, LLC.*

Diaz, Judge.

I.

STATEMENT OF THE CASE

{1}    Plaintiffs are North Carolina counties. (Wake Compl. ¶ 1; Cumberland Compl. ¶ 1; Dare Compl. ¶ 1; Buncombe Compl. ¶ 8.)

{2}    Each Plaintiff has, either by passage of an ordinance or by resolution, enacted an occupancy tax pursuant to authorization from the North Carolina General Assembly (collectively the "Occupancy Tax"). The Occupancy Tax requires remittance and collection of a tax based on the gross receipts derived from the rental of hotel rooms and other similar accommodations within each County. (Wake Compl. ¶ 19; Cumberland Compl. ¶ 19; Dare Compl. ¶¶ 19–20; Buncombe Compl. ¶ 33.)

{3}    Plaintiffs allege that Defendants contract with hotel owners or operators to purchase blocks of hotel rooms at a discounted rate and then offer the rooms to consumers via the internet at a higher rate. (Wake Compl. ¶ 25; Cumberland Compl. ¶ 25; Dare Compl. ¶ 25; Buncombe Compl. ¶ 31.)[1]

{4}    Plaintiffs allege Defendants have not remitted the full amount of the Occupancy Tax. (Wake Compl. ¶¶ 24–27; Cumberland Compl. ¶¶ 24–27; Dare Compl. ¶¶ 24–27; Buncombe Compl. ¶ 36.)

{5}    More specifically, Wake, Cumberland, and Dare Counties allege Defendants charge and collect the Occupancy Tax from consumers based on the higher rate, but only remit amounts to each County based on the discounted rates paid to the hotel owners, thereby pocketing the difference. (Wake Compl. ¶ 25; Cumberland Compl. ¶ 25; Dare Compl. ¶ 25.) Buncombe County professes uncertainty as to whether Defendants engage in this practice (Buncombe Compl. ¶ 35), but it does allege Defendants are "charging more money in 'fees and taxes' than

---

[1] Wake and Cumberland Counties have dismissed their claims against Defendant Maupin-Tour Holding, LLC without prejudice.

required by the statutory occupancy tax rate, resulting in additional, hidden, and unlawfully retained profits." (Buncombe Compl. ¶ 36.)[2]

{6} Plaintiffs also allege Defendants have failed to file occupancy tax returns, as required by law. (Wake Compl. ¶ 29; Cumberland Compl. ¶ 29; Dare Compl. ¶ 29; Buncombe Compl. ¶ 35.)

{7} Plaintiffs assert claims for (1) declaratory judgment; (2) violations of the Occupancy Tax; (3) conversion; (4) imposition of a constructive trust; (5) an accounting; (6) unfair and deceptive trade practices; and (7) agency liability.

{8} They seek (1) an order compelling Defendants to pay the full amount of the tax going forward; (2) recovery of all unpaid taxes; (3) civil penalties pursuant to the Occupancy Tax and state law; (4) treble damages; and (5) recovery of Plaintiffs' costs and attorney fees.

{9} Before the Court are Defendants' Motions to Dismiss.


II.

CONTENTIONS OF THE PARTIES

{10} The Occupancy Tax imposes a tax of some specified percentage on the gross receipts derived from the rental of any room, lodging, or similar accommodation within the County that is "*subject to the State sales tax . . . under Section 105-164.4(a)(3)*" of the North Carolina General Statutes. (Wake Compl. ¶ 19 (emphasis added).)[3]

{11} The parties' central disagreement in these cases relates to the effect of this quoted language upon Defendants' web-based business model.

{12} Specifically, Defendants contend the clause in the Occupancy Tax referencing the "State sales tax" necessarily cabins the reach of Plaintiffs' taxing

---

[2] As to these allegations, Defendants contend (based on a comment made by Dare County's counsel during oral argument) that Plaintiffs may have violated their pleading obligations under Rule 11 of the North Carolina Rules of Civil Procedure. (Defs. Sur-Reply Br. Supp. Mot. Dismiss 2 n.2.) For now, however, the Court accepts the allegations of the Complaints as true, and declines to address a Rule 11 challenge absent a proper motion.

[3] Wake County's Occupancy Tax is representative of the tax enacted by the other Plaintiffs.

authority to those individuals or entities upon whom the state sales tax may be levied. (Defs. Br. Supp. Mot. Dismiss Wake Compl. 3–5.)

{13} Defendants assert the state sales tax is levied only upon "operators of hotels." Defendants deny they are hotel operators and note that the State has never attempted to pin that label on them for purposes of the sales tax. (Defs. Br. Supp. Mot. Dismiss Wake Compl. 3–5.)

{14} Accordingly, Defendants contend it is only the discounted room rate that Defendants pay the hotel owners, and not the additional compensation Defendants receive for facilitating the lodging transactions, which is subject to the Occupancy Tax. (Defs. Br. Supp. Mot. Dismiss Wake Compl. 2–3.)

{15} Plaintiffs, on the other hand, argue that the reach of the Occupancy Tax is broader than that of the state sales tax. According to Plaintiffs, the plain language of the Occupancy Tax encompasses gross receipts received by any "person, firm, corporation, or association" for the rental of a room, irrespective of whether that person or entity operates a hotel. (Wake Mem. Opp'n Mot. Dismiss 9.)

{16} Plaintiffs contend the "subject to the sales tax" clause in the Occupancy Tax is not intended "to limit the Occupancy Tax's reach to operators of hotels . . . but rather to define the types of rental accommodations subject to the tax." (Dare Mem. Opp'n Mot. Dismiss 9.)

{17} As a result, Plaintiffs argue, Defendants must remit the Occupancy Tax based on the full amount they receive from a consumer for a hotel room, including any amount Defendants categorize as compensation for their services.

{18} Plaintiffs also argue that, by collecting the tax on the full amount charged to the consumer and only remitting a portion, Defendants necessarily qualify as "taxable establishments" subject to the Occupancy Tax. (Wake Mem. Opp'n Mot. Dismiss 15.)[4]

---

[4] Defendants concede only that they collect the Occupancy Tax on the discounted rate (*see* Defs. Br. Supp. Mot. Dismiss Wake Compl. 2), but (at least at this stage) the Court must accept Plaintiffs' allegations as true.

{19} Specifically, Plaintiffs contend "Defendants cannot be allowed to charge, collect, and remit a portion of the [tax] on the one hand (while pocketing part of those taxes for themselves) and then claim on the other hand that the [Occupancy Tax does] not apply to them." (Wake Mem. Opp'n Mot. Dismiss 15.)

{20} Defendants make two additional arguments for dismissal of the claims lodged by Cumberland, Dare, and Buncombe Counties.

{21} Defendants assert that Cumberland County has filed suit prematurely, without first exhausting certain administrative remedies promulgated for the collection and enforcement of the Occupancy Tax. (Defs. Br. Supp. Mot. Dismiss Cumberland Compl. 12–16.)

{22} Cumberland County responds that its suit is proper because (1) North Carolina law permits judicial tax collection actions at any time, (2) the doctrine of exhaustion of administrative remedies applies only to private litigants and not a taxing authority, and (3) exhaustion of any such remedies would be futile in this case. (Cumberland Mem. Opp'n Mot. Dismiss 5–11.)

{23} Defendants further assert they are entitled to dismissal of some or all of the claims lodged by Dare and Buncombe Counties because these Counties failed to properly codify or file the various resolutions enacting the Occupancy Tax. (Defs. Br. Supp. Mot. Dismiss Dare Compl. 8 n.3; Defs. Br. Supp. Mot. Dismiss Buncombe Compl. 11–12.)

{24} Dare and Buncombe Counties reject this notion, pointing out that the statutes Defendants cite in support of their argument only apply to ordinances. They assert the enabling legislation authorizing enactment of the Occupancy Tax directed these Counties to levy the tax by resolution. Because they have otherwise complied with the notice and recording requirements set forth in the enabling acts, Dare and Buncombe Counties contend dismissal of their claims on this ground is not appropriate. (Dare Mem. Opp'n Mot. Dismiss 7 n.4; Buncombe Mem. Opp'n Mot. Dismiss 5–7.)

III.

## SUMMARY OF DECISION

{25}   The Court **GRANTS** Defendants' Motion to Dismiss Cumberland County's Complaint, without prejudice to the County's right to re-file the action following exhaustion of its administrative remedies.

{26}   The Court **GRANTS** Defendants' Motions to Dismiss Plaintiffs' claims alleging a violation of the North Carolina Unfair and Deceptive Trade Practices Act.

{27}   The Court also **GRANTS** Defendants' Motions to Dismiss Plaintiffs' claims for conversion.

{28}   In all other respects, Defendants' Motions to Dismiss are **DENIED**.


IV.

## PROCEDURAL HISTORY

{29}   Plaintiffs filed their Complaints on various dates between November 2006 and February 2007.

{30}   The cases were transferred to the North Carolina Business Court, and subsequently consolidated for purposes of pre-trial matters.

{31}   Defendants moved to dismiss on 9 May 2007.

{32}   Briefing on the motions was completed on 21 June 2007, and the Court heard oral arguments on 18 July 2007.


V.

## THE FACTS

A.

## THE PARTIES

{33}   Plaintiffs are duly established North Carolina counties. (Wake Compl. ¶ 1; Cumberland Compl. ¶ 1; Dare Compl. ¶ 1; Buncombe Compl. ¶ 8.)

{34}   Defendants are foreign entities doing business in North Carolina.  (Wake Compl. ¶¶ 2–15; Cumberland Compl. ¶¶ 2–15; Dare Compl. ¶¶ 2–15; Buncombe Compl. ¶¶ 9–29.)

B.

THE CLAIMS

1.

THE STATE SALES TAX

{35}   The North Carolina state sales tax statute imposes a 4% tax on a "retailer's net taxable sales or gross receipts" for the "privilege" of being a "retailer." N.C. Gen. Stat. §105-164.4(a) (2005) (effective July 1, 2007).[5]

{36}   As applied to lodging transactions, the statute provides:

> Operators of hotels, motels, tourist homes, tourist camps, and similar type businesses and persons who rent private residences and cottages to transients are considered retailers under this Article.  A tax at the general rate of tax is levied on the gross receipts derived by these retailers from the rental of any rooms, lodgings, or accommodations furnished to transients for a consideration.

*Id.* § 105-164.4(a)(3).

2.

PLAINTIFFS' AUTHORITY TO TAX

{37}   Plaintiffs received authority to enact the Occupancy Tax from the General Assembly through the passage of enabling legislation.  Wake County's enabling legislation, which in substance is representative of the acts passed for the benefit of the other Plaintiffs, provides in relevant part:

> Section 1. Intent. This act authorizes Wake County to levy a room occupancy tax and a prepared food and beverage tax.
>
> Sec. 2. Definitions. The definitions in G.S. 105-164.3 apply to this act to the extent they are not inconsistent with the provisions of this act. The following definitions also apply in this act:
>
> . . . .
>
> (5) Taxable establishment. A hotel, motel, inn, tourist camp, or similar place that is subject to a room occupancy tax levied pursuant to this act and a retailer that sells prepared food or

---

[5] The tax rate was 4.25% before 1 July 2007.

beverages and is subject to the prepared food and beverage tax levied pursuant to this act.

. . . .

Sec. 4. Occupancy Tax. The Wake County Board of Commissioners may by resolution, levy a room occupancy tax of up to six percent (6%) of the gross receipts derived from the rental of any room, lodging, or accommodation furnished by a hotel, motel, inn, tourist camp, or similar place within the county that is subject to the State sales tax imposed under G.S. 105-164.4(a)(3).

. . . .

Sec. 8. Collection. *Every operator of a taxable establishment shall, on and after the effective date of the levy of a tax under this act, collect the tax.* The tax shall be stated and charged separately from the rental charge or sales price, shall be shown separately on the taxable establishment's sales records, and shall be paid by the purchaser to the taxable establishment as trustee for and on account of the county. The tax shall be added to the rental charge or sales price and shall be passed on to and collected from the purchaser instead of being borne by the taxable establishment.

. . . .

Sec. 9. Administration. The county shall administer and collect the taxes levied pursuant to this act . . . . The taxes levied pursuant to this act are due and payable to the county in monthly installments on or before the fifteenth day of the month following the month in which the tax accrues. *Every taxable establishment liable for the tax shall, on or before the fifteenth day of each month, prepare and render a return to the county. . . .*

1991 N.C. Sess. Laws 594 (emphasis added).

3.

THE OCCUPANCY TAX

{38}   Pursuant to the various enabling acts, each Plaintiff has imposed an Occupancy Tax on the gross receipts derived from the rental of a room within the particular county. (Wake Compl. ¶ 19; Cumberland Compl ¶ 19; Dare Compl. ¶ 19; Buncombe Compl. ¶ 33.)

{39}    Wake County's Occupancy Tax imposes "a six (6) percent tax . . . on the 'gross receipts derived by any person, firm, corporation, or association from the rental of any room, lodging or accommodation furnished by a hotel, motel, inn, tourist camp, or similar place within the County that is subject to the State sales tax imposed under Section 105-164.4(a)(3) of the North Carolina General Statutes.'" (Wake Compl. ¶ 19.)

{40}    Consistent with the enabling legislation, Wake County requires every operator of a '"taxable establishment" to collect the tax and file a return.  (Defs. Br. Supp. Mot. Dismiss Wake Compl. Ex. 1B.)

{41}    Cumberland County's Occupancy Tax states, "The tax rate shall be six (6) percent of the gross receipts of any person, firm, corporation, or association derived from the rental of any sleeping room or lodging furnished in any hotel, motel, or inn located in Cumberland County and subject to the three (3) percent sales tax levied by the State of North Carolina."  (Cumberland Compl. ¶ 19.)

{42}    Cumberland County's ordinance places the onus for collection of the Occupancy Tax on the County's Tax Collector, and it too requires any entity owning or operating a hotel, motel, or inn to file a return.  (Defs. Br. Supp. Mot. Dismiss Cumberland Compl. Ex. 16C.)

{43}    Buncombe County has, by a series of resolutions, enacted an Occupancy Tax of "4% of the gross receipts derived from the rental of any room, lodging, or similar accommodation furnished by any hotel, motel, inn, tourist camp, or other similar place within the County now subject to [the] sales tax imposed by the State under G.S. 105-164.4[a](3)."  (Buncombe Compl. ¶ 33.)  The resolutions provide no further guidance as to collection of the tax, although the County has developed return forms and other materials for enforcement of the resolutions.  (Defs. Br. Supp. Mot. Dismiss Buncombe Compl. Exs. 14–15.)

{44}    Similarly, Dare County has, by a series of resolutions (some of which are codified in the County's Code of Ordinances), enacted a "five (5) percent room occupancy tax . . . on the 'gross receipts derived from the rental' of 'any room,

lodging, or similar accommodation subject to sales tax under G.S. 105-164.4(a)(3)' in Dare County." (Dare Compl. ¶ 19.)[6]

{45}   Pursuant to state law, failure to file a room occupancy tax return or pay the tax subjects the taxpayer to civil penalties and possible criminal prosecution. *See, e.g.,* N.C. Gen. Stat. § 153A-155(e) (2005).

4.

CUMBERLAND COUNTY'S ADMINISTRATIVE PROCEDURE

{46}   Cumberland County has implemented additional administrative procedures related to the enforcement of its Occupancy Tax, although it admits that it did not adhere to them in this case.

{47}   The Cumberland County Tax Collector is required to make an initial determination of all persons or entities subject to the Occupancy Tax. (Cumberland Compl. Ex. B.)   Following such a determination, the Tax Collector is required to "send notice to said person or organization of such determination," together with a copy of the ordinance, the administrative procedures, tax returns, instructions, and a "demand for payment of such taxes as may become due thereafter." (Cumberland Compl. Ex. B.)

{48}   Any person or entity so notified may apply under the Cumberland County procedures for a ruling from the Tax Collector that it is not subject to the tax. (Cumberland Compl. Ex. B.) In conjunction with such a request, the putative taxpayer is entitled (upon request) to a "conference" with the Tax Collector before a ruling issues. (Cumberland Compl. Ex. B.)

{49}   A taxpayer receiving an adverse ruling from the Tax Collector may file a written appeal to the "Occupancy Tax Appeals Panel," which consists of the County Manager, the Assistant County Manager with supervisory responsibility for the Tax Collector, and the County Finance Director. (Cumberland Compl. Ex. B.)

---

[6] Wake and Cumberland Counties have enacted ordinances setting forth the terms of the Occupancy Tax. (Wake Compl. ¶ 19; Cumberland Compl. ¶ 19.) Buncombe County enacted its Occupancy Tax by resolution. (Buncombe Mem. Opp'n Mot. Dismiss 2–3.) In the case of Dare County, its most recent increase in the tax was enacted by resolution. (Dare Mem. Opp'n Mot. Dismiss 6–7.)

# VI.

## PRINCIPLES OF LAW

### A.

### RULE 12(b)(6) MOTION TO DISMISS

{50} The essential question on a motion to dismiss pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure is "whether the facts alleged in the complaint, when viewed in the light most favorable to the plaintiffs, gives rise to a claim for relief on any theory." *Ford v. Peaches Entm't Corp.,* 83 N.C. App. 155, 156, 349 S.E.2d 82, 83 (1986). On a motion to dismiss, the complaint's material factual allegations are taken as true. *Oberlin Capital, L.P. v. Slavin,* 147 N.C. App. 52, 56, 554 S.E.2d 840, 844 (2001) (citing *Hyde v. Abbott Labs., Inc.*, 123 N.C. App. 572, 575, 473 S.E.2d 680, 682 (1996)).

{51} "The complaint must be liberally construed, and the court should not dismiss the complaint unless it appears beyond a doubt that the plaintiff could not prove any set of facts to support his claim which would entitle him to relief." *Block v. County of Person*, 141 N.C. App. 273, 277–78, 540 S.E.2d 415, 419 (2000).

{52} However,

> [d]ismissal of a complaint under Rule 12(b)(6) is proper when one of the following three conditions is satisfied: (1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint on its face reveals the absence of fact sufficient to make a good claim; (3) when some fact disclosed in the complaint necessarily defeats plaintiff's claim.

*Shepherd v. Ocwen Fed. Bank, FSB*, 172 N.C. App. 475, 477, 617 S.E.2d 61, 63 (2005) (citation and quotation marks omitted).

### B.

### SUBJECT MATTER JURISDICTION

{53} "As a general rule, where the legislature has provided by statute an effective administrative remedy, that remedy is exclusive and its relief must be exhausted before recourse may be had to the courts." *Presnell v. Pell*, 298 N.C. 715, 721, 260 S.E.2d 611, 615 (1979).

{54}  "If a plaintiff has failed to exhaust its administrative remedies, the court lacks subject matter jurisdiction and the action must be dismissed." *Justice for Animals, Inc. v. Robeson County*, 164 N.C. App. 366, 369, 595 S.E.2d 773, 775 (2004) (citing *Shell Island Homeowners Ass'n v. Tomlinson*, 134 N.C. App. 217, 220, 517 S.E.2d 406, 410 (1999)).

{55}  In considering a motion to dismiss for lack of subject matter jurisdiction, the court may consider and weigh matters outside of the pleadings. *Tart v. Walker*, 38 N.C. App. 500, 502, 248 S.E.2d 736, 737 (1978).

C.

## STATUTORY INTERPRETATION

{56}  "The interpretation of statutory language is a matter of law, and thus, appropriately resolved upon a Rule 12(b)(6) motion." *Peacock v. Shinn*, 139 N.C. App. 487, 497, 533 S.E.2d 842, 849 (2000) (citing *Taylor Home, Inc. v. City of Charlotte*, 116 N.C. App. 188, 195, 447 S.E.2d 438, 443 (1994)).

{57}  "The cardinal principle of statutory construction is that the intent of the legislature is controlling." *State ex rel. Utils. Comm'n v. Public Staff,* 309 N.C. 195, 210, 306 S.E.2d 435, 444 (1983) (citations omitted); *see also Colonial Pipeline Co. v. Clayton*, 275 N.C. 215, 226, 166 S.E.2d 671, 679 (1969) (holding that construction of a tax statute is a question of legislative intent).

{58}  The best indicator of the legislature's intent is the statute's plain language. *See Colonial Pipeline*, 275 N.C. at 226, 166 S.E.2d at 679.  "If the language of a statute is free from ambiguity and expresses a single, definite, and sensible meaning, judicial interpretation is unnecessary and the plain meaning of the statute controls." *Mazda Motors of Am., Inc. v. Sw. Motors, Inc.*, 296 N.C. 357, 361, 250 S.E.2d 250, 253 (1979) (citations omitted).

D.

## UNFAIR AND DECEPTIVE TRADE PRACTICES

{59}  To state a claim under the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§ 75-1.1 to 75-16 (the "UDTPA"), Plaintiffs must allege "(1) defendants committed an unfair or deceptive act or practice, (2) in or

affecting commerce and (3) plaintiff was injured as a result." *Phelps-Dickson Builders, L.L.C. v. Amerimann Partners*, 172 N.C. App. 427, 439, 617 S.E.2d 664, 671 (2005) (citing *Edwards v. West*, 128 N.C. App. 570, 574, 495 S.E.2d 920, 923 (1998)).

{60}   Although the UDTPA's language is broad, "the Act is not intended to apply to all wrongs in a business setting." *HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 593, 403 S.E.2d 483, 492 (1991).  This is particularly so where the alleged wrong is already the subject of extensive governmental regulation and oversight.  *See Skinner v. E. F. Hutton & Co.,* 314 N.C. 267, 275, 333 S.E.2d 236, 241 (1985) (holding that "securities transactions are beyond the scope of N.C.G.S. § 75-1.1" in part because securities transactions are "already subject to pervasive and intricate regulation" under state and federal law).

{61}   Moreover, it is beyond cavil that the UDTPA's primary purpose is to protect the consuming public.  *Id.* at 275, 333 S.E.2d at 241. Consistent with that purpose, the UDTPA gives a private cause of action to consumers aggrieved by unfair or deceptive business practices.  *See Marshall v. Miller*, 302 N.C. 539, 543, 276 S.E.2d 397, 400 (1981); *see also Bhatti v. Buckland*, 328 N.C. 240, 245, 400 S.E.2d 440, 443 (1991) (stating that the purpose of the UDTPA "is to declare, and to provide civil legal means to maintain, ethical standards of dealings between persons engaged in business . . . and the consuming public in this State").

## E.

## CONVERSION

{62}   The tort of conversion is "'an *unauthorized* assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights.'" *Lake Mary Ltd. P'ship v. Johnston*, 145 N.C. App. 525, 531, 551 S.E.2d 546, 552 (2001) (quoting *Peed v. Burleson's, Inc.*, 244 N.C. 437, 439, 94 S.E.2d 351, 353 (1956)) (emphasis added).

{63}   "Where there has been no wrongful taking or disposal of [personal property], and the defendant has merely come rightfully into possession and then

refused to surrender [the property], demand and refusal are necessary to the existence of the tort." *Hoch v. Young*, 63 N.C. App. 480, 483, 305 S.E.2d 201, 203 (1983) (citation omitted).


VII.

ANALYSIS

A.

FAILURE TO REMIT THE OCCUPANCY TAX

{64}   These cases present thorny issues of statutory interpretation regarding the scope of Plaintiffs' taxing power under the Occupancy Tax.

{65}   Nearly identical claims have been asserted by cities and counties across the country, and the parties have referred me to a number of decisions from these jurisdictions.  Not surprisingly, the result turns on the particulars of the tax statute and the allegations of the complaints.  *See, e.g., City of Charleston v. Hotels.com, L.P.,* No. 2:06-cv-1646-PMD, 2007 U.S. Dist. LEXIS 83628 (D.S.C. Nov. 5, 2007) (denying motion to dismiss where tax was imposed on those engaged in "furnishing accommodations to transients" because defendants received money in exchange for "supplying" hotel rooms); *City of North Myrtle Beach v. Hotels.com L.P.*, No. 4:06-CV-3063-RBH (D.S.C. Sept. 30, 2007) (denying motion to dismiss where ordinance taxed the gross proceeds received by a provider or seller of hotel rooms); *City of Orange v. Hotels.com, L.P.*, No. 1:06-CV-413, 2007 U.S. Dist. LEXIS 70482 (E.D. Tex. Sept. 5, 2007) (granting motion to dismiss where the plain language of the ordinance imposed the tax only on the amount received by the hotel in consideration for occupancy of the room); *City of San Antonio v. Hotels.com*, No. SA-06-CA-381-OG, 2007 U.S. Dist. LEXIS 39757 (W.D. Tex. Mar. 16, 2007) (denying motion to dismiss where occupancy tax was levied on any person or entity owning, operating, managing, or controlling any hotel and plaintiff alleged defendants had a right to control occupancy as a result of their contracts with hotel); *City of Gallup v. Hotels.com, L.P.*, No. 06-0549-JC (D.N.M. Jan. 30, 2007) (denying motion to dismiss where occupancy tax was levied as a percentage of the total rent paid for lodging

and plaintiff alleged defendants were collecting tax based on retail rate paid by consumers but only remitting tax on the wholesale rate paid to the hotel owner); *Leon County v. Hotels.com, L.P.*, No. 06-21878, 2006 U.S. Dist. LEXIS 88253 (S.D. Fla. Dec. 6, 2006) (denying motion to dismiss where occupancy tax was levied for the privilege of renting, leasing, or letting for consideration hotel rooms and complaint alleged defendants engaged in the practice of subletting accommodations); *City of Fairview Heights v. Orbitz, Inc.*, No. 05-CV-840-DRH, 2007 U.S. Dist. LEXIS 26736 (S.D. Ill. July 12, 2006) (denying motion to dismiss on principal claims where ordinance imposed a duty on owner of every hotel or motel to collect the tax and defined "owner" to include any person receiving consideration for the rental of a hotel room); *City of Rome v. Hotels.com, L.P.*, No. 4:05-CV-249-HLM, 2006 U.S. Dist. LEXIS 56369 (N.D. Ga. May 8, 2006) (denying motion to dismiss where plaintiff alleged defendants were collecting excise taxes on retail value of the transaction but only remitting a reduced amount based on wholesale rates paid by defendants for the hotel rooms); *City of Findlay v. Hotels.com, L.P.*, 441 F. Supp. 2d 855 (N.D. Ohio 2006) (denying motion to dismiss where, although ordinance did not impose a direct tax on defendants, plaintiff pled that defendants were in fact collecting taxes under the ordinance and failing to remit the same).

{66}   At least one North Carolina court has considered the questions before me. In *Pitt County v. Hotels.com L.P.*, United States District Judge Terrence Boyle held on reconsideration that the Pitt County Room Occupancy Tax Ordinance (the "Pitt County Ordinance") did not apply to the defendant on-line travel companies.  No. 4:06 CV-30-BO (E.D.N.C. Aug. 12, 2007).

{67}   Judge Boyle initially denied the defendants' motion to dismiss.  *See Pitt County v. Hotels.com L.P.*, No. 4:06 CV-30-BO (E.D.N.C. Mar. 29, 2007).  He reasoned in the first instance that the reach of the Pitt County Ordinance was not limited "to persons or businesses who turn over keys, or maintain hotel premises," but in fact "encompasses all 'gross receipts derived' from a room rental, regardless of whether the rental is arranged online by a third party, or during a face-to-face transaction between a hotel and a walk-in guest."  *Id.*, slip op. at 6.

{68} On reconsideration, however, Judge Boyle granted the defendants' motion to dismiss, holding that the "subject to the sales tax" clause in the Pitt County Ordinance served to make the occupancy tax co-extensive with the state sales tax. *Pitt County v. Hotels.com L.P.,* No. 4:06 CV-30-BO, slip op. at 10 (E.D.N.C. Aug. 12, 2007). As a result, Judge Boyle determined the reach of the Pitt County Ordinance was limited to the gross receipts derived by "operators of hotels" and similar places. *Id.,* slip op. at 10–11.

{69} Because neither the sales tax statute nor the Pitt County Ordinance defined the word "operator," Judge Boyle looked to the ordinary meaning of that word. *Id.,* slip op. at 7. According to Judge Boyle, "'to operate' means generally to conduct or to manage a commercial enterprise's daily affairs." *Id.* As a result, because the defendant on-line travel companies did not conduct or manage a hotel's daily affairs, they were not subject to the Pitt County Ordinance. *Id.*

{70} The Court takes no position on the merits of Judge Boyle's analysis. Suffice it to say that the issues of statutory interpretation in these cases are complex. At this stage, however, the Court need only look to Plaintiffs' pleadings to conclude that dismissal of the principal claims is not appropriate.

{71} The Complaints in these cases allege (either directly or by implication) that Defendants are in fact charging and collecting the Occupancy Tax from consumers, but not remitting to Plaintiffs the full amount collected. In fact, Plaintiffs allege Defendants are charging and collecting the tax on the higher retail rate charged to consumers, but only remitting to Plaintiffs an amount of tax based on the lower wholesale rate paid to hotel owners, thereby pocketing the difference. Plaintiffs also allege Defendants are not filing occupancy returns, as required by law. (Wake Compl. ¶¶ 25, 29; Cumberland Compl. ¶¶ 25, 29; Dare Compl. ¶ 25, 29; Buncombe Compl. ¶¶ 35–36.)

{72} On these facts, it does not matter whether (as Defendants urge) the reach of the Occupancy Tax is co-extensive with that of the state sales tax or whether Defendants "operate" hotels. Instead, by (1) collecting the tax from consumers and then failing to remit the full amount to Plaintiffs, and (2) not filing returns as

required by law, Defendants have not complied with the plain language of the Occupancy Tax (and the corresponding enabling acts) requiring them to account for and remit all such taxes.

{73} Thus, at least at this stage of the case, Plaintiffs have stated claims that would entitle them to relief. *See City of Rome v. Hotels.com, L.P.*, No. 4:05-CV-249-HLM, 2006 U.S. Dist. LEXIS 56369 (N.D. Ga. May 8, 2006) (applying the same analysis and reaching same result).

{74} Accordingly, the Court **DENIES** Defendants' motions to dismiss Counts I, II, IV, V, and VII of the Complaints (all of which directly address the alleged violations of the Occupancy Tax) as well as Plaintiffs' separate claims for civil penalties under the Occupancy Tax.

## B.

## THE UDTPA CLAIM

{75} The Court does, however, **GRANT** Defendants' motions to dismiss Plaintiffs' UDTPA claims. These claims fail as a matter of law for four separate reasons.

{76} First, except for the claim that Defendants are misleading consumers as to their liability for the Occupancy Tax, Plaintiffs have failed to allege anything beyond an ordinary, garden-variety failure to pay a tax. In other words, Plaintiffs have failed to allege the type of egregious or aggravating circumstances that would warrant UDTPA liability.

{77} In that regard, the Court agrees with Defendants that if Plaintiffs "could successfully state a UDTPA claim in a tax dispute on the facts alleged, then every tax dispute between [the State] and a taxpayer who opposes application of a tax could become a UDTPA claim, thus allowing governments to assert treble damages in ordinary tax disputes." (Defs. Br. Supp. Mot. Dismiss Wake Compl. 38.)

{78} Second, to the extent Plaintiffs' UDTPA claim is premised on the allegation that Defendants are misleading consumers by including in their retail room rates a charge for the Occupancy Tax that thereafter is not remitted fully to Plaintiffs (Wake Compl. ¶ 25), the victims of this deceptive practice are not

Plaintiffs, but rather those consumers who are duped into paying more for a room than they would otherwise. Put another way, Plaintiffs fail to allege what standing they have to vindicate the rights of consumers purportedly violated by Defendants' actions.[7]

{79} Third, while the Court agrees with Plaintiffs that a political subdivision of the State may, under certain circumstances, pursue a UDTPA claim, it finds no basis for allowing such a claim on these facts.

{80} In enacting the UDTPA, the North Carolina General Assembly "intended to establish an effective private cause of action for *aggrieved consumers* in [North Carolina] . . . because common law remedies had proved often ineffective." *Marshall v. Miller*, 302 N.C. 539, 543, 276 S.E.2d 397, 400 (1981) (emphasis added).

{81} In this case, Plaintiffs are political subdivisions of the State seeking to enforce their taxing authority. By even the most generous of interpretations, there is no commercial activity involved here that implicates the UDTPA, and therefore no basis for allowing these claims to proceed.

{82} Finally, the Occupancy Tax already provides a series of civil and criminal penalties for Defendants' alleged failure to remit the tax. N.C. Gen. Stat. § 153A-155(e) (2005). Consequently, permitting Plaintiffs to pursue treble damages on these facts, where there already exists an extensive regulatory regime to address the violations, would improperly "create overlapping supervision, enforcement, and liability in this area." *See HAJMM Co. v. House of Raeford Farms, Inc.*, 328 N.C. 578, 593, 403 S.E.2d 483, 493 (1991) (affirming trial court's dismissal of a UDTPA claim involving a corporate securities dispute in part because of "pervasive regulation" of securities transactions by other sources); *see also Sideshow, Inc. v. Mammoth Records, Inc.*, 751 F. Supp. 78, 80–81 (E.D.N.C. 1990) (holding that plaintiff's trademark claims were outside the scope of the UDTPA because plaintiff had other adequate remedies); *Bach Halsey Stuart, Inc. v. Hunsucker*, 38 N.C. App.

---

[7] Section 75-9 of the North Carolina General Statutes authorizes the North Carolina Attorney General to prosecute UDTPA claims on behalf of the public; it provides no such authority to Plaintiffs.

414, 420–21, 248 S.E.2d 567, 570 (1978) (holding that alleged violations relating to the sale of commodities did not fall within the UDTPA because there existed a "pervasive" federal scheme for regulating commodities transactions).

{83} Accordingly, the Court **GRANTS** Defendants' motions to dismiss Plaintiffs' UDTPA claims.

## C.

## CONVERSION

{84} Defendants next seek dismissal of Plaintiffs' claims alleging conversion. The Court also **GRANTS** this relief.

{85} Plaintiffs' core premise in these lawsuits is that Defendants have a duty to collect and remit the Occupancy Tax based on the retail rates they charge consumers for hotel rooms. But that contention has legs only if Defendants may in fact lawfully collect the full amount of the tax. To do that, of course, Defendants must first obtain the tax proceeds from the consumer. Put another way, Defendants must lawfully come into possession of the proceeds before they can remit the same to Plaintiffs.

{86} The law, however, is clear that where a defendant lawfully comes into possession of another's property, a claim for conversion will lie only when the rightful owner demands return of the property and the defendant refuses. *Hoch v. Young*, 63 N.C. App. 480, 483, 305 S.E.2d 201, 203 (1983).

{87} In this case, Plaintiffs fail to allege this condition precedent to the prosecution of this tort. Accordingly, the Court **GRANTS** Defendants' motions to dismiss Plaintiffs' claims for conversion.

## D.

## CUMBERLAND COUNTY'S FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

{88} The Court next addresses an argument for dismissal unique to Cumberland County.

{89} Defendants allege that Cumberland County's failure to exhaust its own administrative remedies for collection and enforcement of the Occupancy Tax

requires dismissal of its case. The Court agrees and **GRANTS** Defendants' motion to dismiss Cumberland's Complaint on this ground.

{90} "As a general rule, where the legislature has provided by statute an effective remedy, that remedy is exclusive and its relief must be exhausted before recourse may be had to the courts." *Presnell v. Pell*, 298 N.C. 715, 721, 260 S.E.2d 611, 615 (1979) (citing *King v. Baldwin*, 276 N.C. 316, 172 S.E.2d 12 (1970)).

{91} North Carolina courts require exhaustion of administrative remedies out of judicial restraint and respect for the expertise of the administrator. *See King*, 276 N.C. at 324, 172 S.E.2d at 17 ("The State Board [of Assessments] – unlike the courts – has the staff, the specialized knowledge and expertise necessary to make informed decisions upon questions relating to the valuation and assessment of property.").

{92} Given the level of expertise required in tax cases, the doctrine of exhaustion of administrative remedies has particular application here. As one court has explained, "[t]he doctrine . . . has often been employed in taxpayer cases where the statutes provide administrative channels through which a taxpayer may question the appraisal of his property." *Church v. Madison County Bd. of Educ.*, 31 N.C. App. 641, 646, 230 S.E.2d 769, 771 (1976).

{93} Cumberland County, however, resists application of the doctrine in this case, contending that (1) North Carolina law expressly permits it to prosecute a tax collection action at any time, (2) the doctrine applies only to private litigants aggrieved by a governmental decision, and (3) exhaustion is not required if the administrative remedy is either inadequate or futile. (Cumberland Mem. Opp'n Mot. Dismiss 5–11.) The Court disagrees.

{94} As to the County's first contention, the statute relied on for that proposition provides:

> Action may be brought at any time and in any court of competent jurisdiction in this State or other State, in the name of the State and at the instance of the Secretary of Revenue, to recover the amount of any taxes, penalties, and interest due under this Subchapter. This remedy

is in addition to all other remedies for the collection of said taxes and shall not in any respect abridge the same.

N.C. Gen. Stat. §105-239 (2005).[8]

{95} As Defendants point out, on its face, this statute speaks only to the powers of the North Carolina Secretary of Revenue in enforcement actions, and says nothing about the authority of a County to bypass its own administrative procedures with respect to the enforcement of the Occupancy Tax.

{96} Cumberland County's contention that the doctrine of exhaustion of remedies applies only to private litigants fares no better. While it is true, as the County argues, that the North Carolina cases address exhaustion only where a party aggrieved by a state or agency decision bypasses its administrative remedies, this does not mean that a governmental body should be immune from a similar requirement.

{97} To the contrary, requiring Cumberland County to exhaust its administrative remedies is consistent with the views of other courts that have considered the question.

{98} For example, in *City of Atlanta v. Hotels.com*, the plaintiff sued seventeen online travel companies (many of whom are defendants in this case) for their alleged failure to remit occupancy taxes. No. A07A1376, 2007 Ga. App. LEXIS 1144 (Ga. Ct. App. Oct. 26, 2007).

{99} The trial court dismissed the complaint for lack of subject matter jurisdiction because of the City's failure to comply with its administrative tax assessment procedures before bringing suit. *Id.,* slip op. at 1.

{100} The Georgia Court of Appeals affirmed, specifically rejecting the City's argument that the exhaustion doctrine did not apply to it:

> It is true that the exhaustion doctrine usually is applied to bar lawsuits brought by an aggrieved private citizen against the government. Nevertheless, we have indicated that a similar principle

---

[8] The General Assembly has repealed this statute effective 1 January 2008. *See* 2007 N.C. Sess. Laws 491.

can be applied against the government when it bypasses administrative procedures prior to bringing suit against a private citizen, at least where the statutory language reflects that the procedures are a mandatory condition precedent to filing suit, and where compliance by the government with the procedures would not be useless or futile under the circumstances. Such a rule makes particular sense in the tax context, where public policy and judicial economy counsel in favor of allowing questions of tax assessment and collection to first be resolved at the local level.

*Id.*, slip op. at 5–6 (internal citations omitted).[9]

{101} As was the case in *City of Atlanta,* the plain language of Cumberland County's administrative procedures makes clear they are conditions precedent to filing suit.

{102} The procedures expressly direct "*all* persons entrusted with the enforcement of [the] ordinance to comply with such procedures" and further obligates the Tax Collector (or his designee) to (a) compile a list of those persons or entities subject to the occupancy tax, (b) open an occupancy tax account for each such taxpayer, and (c) send notice to the putative taxpayer of the Tax Collector's determination, together with a copy of the ordinance, the County's administrative procedures, the relevant tax return forms, and a demand for payment of the tax. (Cumberland Compl. Ex. B (emphasis added).)

{103} If a taxpayer disputes the Tax Collector's determination, it may contest it and seek a pre-ruling conference with the Tax Collector. (Cumberland Compl. Ex. B.) The Tax Collector must rule in writing on the taxpayer's objection, and a ruling adverse to the taxpayer may be appealed to the Occupancy Tax Appeals Panel, consisting of the County Manager, the Assistant County Manager with authority

---

[9] As the Georgia Court of Appeals noted, this conclusion is "in accord with courts in several other jurisdictions, which have similarly held that counties and cities must comply with mandatory administrative tax assessment procedures prior to bringing suit against a taxpayer." *City of Atlanta*, slip op. at 6 (citing *County of Nassau v. Hotels.com, L.P.*, No. 2:06-cv-05724-ADS-WDW (E.D.N.Y. Aug. 17, 2007); *City of Rome v. Hotels.com, L.P.*, No. 4:05-CV-249-HLM, 2006 U.S. Dist. LEXIS 56369 (N.D. Ga. May 10, 2007); *City of Los Angeles v. Hotels.com*, *L.P.*, No. BC 326693 (Cal. Super. Ct. July 27, 2007); *City of San Diego v. Hotels.com, L.P.*, No. GIC 861117 (Cal. Super. Ct. July 27, 2007); *City of Philadelphia v. Hotels.com*, Nos. 0106023, 122014, 2006 Phila. Ct. Com. Pl. LEXIS 218 (Pa. Ct. Common Pleas May 25, 2006)); *see also City of Oakland v. Hotels.com, L.P.*, No. C 07-3432 SBA (N.D. Cal. Nov. 5, 2007).

over the Tax Collector, and the County Finance Director. (Cumberland Compl. Ex. B.) Only after that body issues a decision may an aggrieved party resort to the courts.

{104} Of course, Cumberland County was not obligated to provide an administrative process for resolving disputes over the enforcement of its Occupancy Tax. But having chosen to create these procedures, it may not arbitrarily decide to ignore them in favor of a lawsuit.

{105} Nor should the County be excused from adhering to its procedures because they would be inadequate or futile. In the first place, the County's contention that it will be delayed in "obtaining critically needed revenue" (Cumberland Mem. Opp'n Mot. Dismiss 10) presumes a favorable result on questions that are far from settled, and is an argument that could be used in every case to thwart a taxpayer's resort to administrative remedies.

{106} Moreover, it is not correct (despite the County's contention) that "only through discovery, which is not available in the administrative process, can it be determined if Defendants are actually collecting but failing to remit the [occupancy] tax." (Cumberland Mem. Opp'n Mot. Dismiss 11.)

{107} To the contrary, the County's administrative procedures provide for an audit of the records and accounts of every person or entity subject to the Occupancy Tax, and North Carolina law provides independent authority for the issuance of an administrative search warrant where a taxpayer fails to cooperate with such an audit. *See* N.C. Gen. Stat. § 15-27.2 (2005) (establishing standards for issuance of administrative search and inspection warrants).

{108} Lastly, even if this matter eventually returns to this Court, compliance with the County's administrative procedures "may resolve or clarify several factual issues related to whether the companies owe the tax and in what amount, thereby narrowing the issues for [trial] and resulting in a more efficient and streamlined judicial proceeding." *City of Atlanta v. Hotels.com*, No. A07A1376, 2007 Ga. App. LEXIS 1144, slip op. at 16 (Ga. Ct. App. October 26, 2007).

{109}  Because Cumberland County's Complaint fails to allege that it exhausted its administrative remedies, the Court **GRANTS** Defendants' motion to dismiss the County's action for lack of subject matter jurisdiction.

{110}  Dismissal of the action, however, shall be without prejudice to the County's right to re-file suit following exhaustion of its administrative remedies.[10]

E.

## FAILURE TO CODIFY THE OCCUPANCY TAX

{111} Finally, Defendants argue that Buncombe County's Complaint (and that portion of Dare County's Complaint seeking recovery pursuant to a 2001 resolution increasing the amount of its Occupancy Tax) must be dismissed because these Plaintiffs failed to codify their tax schemes or otherwise publish the particulars of the Occupancy Tax in a book of ordinances available for public review and scrutiny. (Defs. Br. Supp. Mot. Dismiss Buncombe Compl. 11–12; Defs. Br. Supp. Mot. Dismiss Dare Compl. 8 n.3.)

{112}  Buncombe and Dare Counties respond that the General Assembly specifically authorized them to enact their Occupancy Tax by resolution, and thus the codification requirements otherwise applicable to ordinances do not apply. (Buncombe Mem. Opp'n Mot. Dismiss 5–7; Dare Mem. Opp'n Mot. Dismiss 7 n.4.) The Court agrees.

{113} Defendants correctly note that where the General Assembly has legislated procedural requirements for the enactment of county or city ordinances, they must be followed. (Defs. Br. Supp. Mot. Dismiss Buncombe Compl. 11–12.)

{114} But what Defendants ignore is that the legislature is also free to except municipal corporations from these statutory requirements and authorize substantive action by other means. *See, e.g., Jones v. Comm'rs,* 137 N.C. 579, 596, 50 S.E. 291, 297 (1905) (holding that counties are "simply agencies of the State, constituted for the convenience of local administration in certain portions of the State's territory, and in the exercise of such functions they are subject to almost

---

[10] The Court **DENIES** Cumberland County's request that the case be stayed pending the County's compliance with its administrative procedures.

unlimited legislative control"); *White v. Comm'rs of Chowan County,* 90 N.C. 437, 438 (1884) (holding that the functions and powers of counties are not always the same, and they may be "enlarged, abridged or modified at the will of the legislature").

{115} In this case, the General Assembly did precisely that, by passing enabling legislation authorizing Buncombe and Dare Counties to levy a room occupancy tax and further directing that the tax could be levied only by resolution. N.C. Gen. Stat. § 153A-155 (2005); *see also* 1983 N.C. Sess. Laws 908, § 17; 1985 N.C. Sess. Laws 449, § 1; 1985 N.C. Sess. Laws 942, § 1; 1991 N.C. Sess. Laws 177, § 3; 2001 N.C. Sess. Laws 439, § 3.1; 2001 N.C. Sess. Laws 162, § 1.

{116} Moreover, in each case, Plaintiffs enacted the tax only after providing notice to the public and an opportunity to be heard. (Defs. Br. Supp. Mot. Dismiss Buncombe Compl. Exs. 11–13; Dare Compl. Ex. B.)

{117} Defendants do not dispute that these Plaintiffs complied with the requirements set forth in the enabling acts. Rather, they argue Plaintiffs "failure to organize [their] laws as required [either by codification or by inclusion in a book of ordinances] leaves the public and courts with no means of independently researching the law and at the mercy of . . . county officials to tell them what laws [each] county has enacted." (Defs. Br. Supp. Mot. Dismiss Buncombe Compl. 12.)

{118} Defendants' theoretical parade of horribles notwithstanding, the Court is not persuaded.

{119} In the first place, the plain language of the enabling acts (which are easily accessible) directed Buncombe and Dare Counties to pass their Occupancy Tax by resolution. *See* N.C. Gen. Stat. § 153A-155 (2005); *see also* 1983 N.C. Sess. Laws 908, § 17; 1985 N.C. Sess. Laws 449, § 1; 1985 N.C. Sess. Laws 942, § 1; 1991 N.C. Sess. Laws 177, § 3; 2001 N.C. Sess. Laws 39, § 3.1; 2001 N.C. Sess. Laws 162, § 1.

{120} In reliance on these legislative mandates, these Plaintiffs gave notice to the public as to each proposed resolution and provided their citizens an opportunity to be heard. *See* N.C. Gen. Stat. § 153A-12 (requiring counties to exercise corporate power in the manner provided by the law of the State).

{121} Second, although the resolutions enacting the Occupancy Tax may not be kept in the manner of a code or book of ordinances, at least in the case of Buncombe County, they are recorded in the official Minute Books of the County's Board of Commissioners, which the County Clerk has attested is an indexed public record available for inspection.  (Kathy Hughes Aff. ¶¶ 8, 10, 11.)[11]

{122} Finally, Defendants do not contend they have in fact been hampered in defending this case by the manner in which the Occupancy Tax was passed. Certainly, the briefs and arguments submitted to this Court admit of no such deficiency.

{123}  Accordingly, the Court **DENIES** Defendants' motions to dismiss the Buncombe and Dare County complaints on this ground.

## VIII.
## CONCLUSION

{124} The Court **GRANTS** Defendants' Motion to Dismiss Cumberland County's Complaint, without prejudice to the County's right to re-file the action following exhaustion of its administrative remedies for enforcing the Occupancy Tax.

{125} The Court **GRANTS** Defendants' Motions to Dismiss Plaintiffs' claims alleging a violation of the North Carolina Unfair and Deceptive Trade Practices Act.

{126} The Court also **GRANTS** Defendants' Motions to Dismiss Plaintiffs' claims for conversion.

{127} In all other respects, Defendants' Motions to Dismiss are **DENIED**.

---

[11] The Court considered this affidavit without objection.