Surratt v. Brown, 2015 NCBC 72.

STATE OF NORTH CAROLINA

COUNTY OF FORSYTH

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
15 CVS 1551

JOSEPH LEE SURRATT,

         Plaintiff,

     v.

MITCHELL KENDALL BROWN;
MITCHELL KENDALL BROWN
d/b/a DÉJÀ VU TATTOO AND
PIERCING; MITCHELL KENDALL
BROWN d/b/a SIGNATURED
SOULZ; and TATTOO THERAPY,
LLC,

         Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

ORDER & OPINION

{1}     THIS MATTER is before the Court on Defendants' Motion to Dismiss, made pursuant to Rule 12(b)(6) of the North Carolina Rules of Civil Procedure ("Rule(s)"), and Defendants' Motion to Drop [Strike] Certain Defendants, made pursuant to Rule 21 ("Motion to Strike"). For the reasons stated below, the Motion to Dismiss is GRANTED IN PART and DENIED IN PART and the Motion to Strike is DENIED.

> *Wilson Helms & Cartledge, LLP by G. Gray Wilson and Matthew W. Georgitis for Plaintiff.*

> *Norman L. Sloan for Defendants.*

Gale, Chief Judge.

## I.    PROCEDURAL BACKGROUND

{2}     The current litigation follows the voluntary dismissal of an earlier action filed on April 1, 2013 ("First Action").

{3}     In the First Action, Plaintiff Joseph Lee Surratt ("Surratt") initiated an individual action against Defendant Mitchell Kendall Brown ("Brown") and

made claims against the following entities: Déjà Vu Tattoo and Piercing, LLC; Signatured Soulz of Greensboro, LLC; Mitchell Kendall Brown d/b/a Déjà Vu Tattoo and Piercing of Greenville; and Déjà Vu Franchise Group, LLC. After the case was designated a complex business case and assigned to the undersigned, Plaintiff voluntarily dismissed Déjà Vu Tattoo and Piercing, LLC; Signatured Soulz of Greensboro, LLC; and Déjà Vu Franchise Group, LLC without prejudice on July 22, 2013. Plaintiff dismissed all remaining claims in the First Action on February 20, 2015.

{4}     On March 9, 2015, Plaintiff initiated the present action ("Second Action") against Brown; Déjà Vu Tattoo and Piercing, LLC; Signatured Soulz of Greensboro, LLC; Déjà Vu Franchise Group, LLC; Tattoo Therapy, LLC; Mitchell Kendall Brown d/b/a Déjà Vu Tattoo and Piercing; and Mitchell Kendall Brown d/b/a Signatured Soulz. The Complaint alleges claims for (1) declaratory judgment, (2) conversion, (3) constructive trust, (4) breach of fiduciary duties, (5) misrepresentation, (6) breach of contract, (7) unfair and deceptive trade practices ("UDTP"), (8) actual and constructive fraud, (9) unjust enrichment, and (10) dissolution and accounting. The Second Action was designated a complex business case and assigned to the undersigned. On April 22, 2015, Plaintiff voluntarily dismissed Déjà Vu Tattoo and Piercing, LLC; Signatured Soulz of Greensboro, LLC; and Déjà Vu Franchise Group, LLC with prejudice.

{5}     Defendants filed the Motion to Strike on May 1, 2015, and the Motion to Dismiss on May 6, 2015. As an alternative to the Motion to Dismiss, the Motion to Strike seeks to strike claims against the remaining entity Defendants, Mitchell Kendall Brown d/b/a Déjà Vu Tattoo and Piercing, Mitchell Kendall Brown d/b/a Signatured Soulz, and Tattoo Therapy, LLC ("the Moving Entity Defendants") from the Complaint, first on the basis that the first two entities do not exist and second because, in any event, Brown would be personally responsible for any liability that Surratt may prove.

{6}     The Court held oral argument on the motions on June 17, 2015, at which Plaintiff's counsel indicated that he would not pursue his UDTP claim.

Defendants' counsel reaffirmed statements in Defendants' brief that while Brown denies all allegations of the Complaint, if Plaintiff succeeds, Brown will be individually responsible for any liability Plaintiff succeeds in proving.

## II.  FACTUAL BACKGROUND

{7}  The Court accepts the following facts alleged in the Complaint as true for purposes of the Motion to Dismiss.  It considers other evidence of record when evaluating the Motion to Strike.

{8}  The Complaint asserts two related but separate oral agreements. Surratt and Brown formed the first agreement in May 2010, when they orally agreed to open and operate a tattoo and piercing business ("the Business"), with Brown financing the Business in exchange for a thirty-percent share in its profits and Surratt opening and operating the Business for a seventy-percent share in its profits.

{9}  Pursuant to this agreement, Surratt created the Déjà Vu name and logo and "was the party solely responsible for store design, logo design, and overseeing of the construction of the tattoo and piercing business storefront." (Compl. ¶ 15.)  On November 4, 2010, the "Certificate of Partnership or Business Under Assumed Name in Forsyth County to Déjà Vu Tattoo and Piercing" was recorded in Forsyth County, listing Surratt and Brown as owners.  (Compl. ¶ 11.) On May 5, 2011, articles of organization were filed for Déjà Vu Tattoo and Piercing, LLC, listing Surratt and Brown as members.  The store opened at Hanes Mall in Winston-Salem, North Carolina on February 18, 2011.

{10}  Surratt alleges that the second agreement was formed two months later, when Surratt and Brown agreed to expand their venture "by opening additional retail locations, of which Plaintiff and Defendant would each maintain 50% ownership." (Compl. ¶ 19.)  At oral argument, Plaintiff's counsel indicated that this allegation should be interpreted to limit the scope of the agreement and the claim's application to the pursuit of additional tattoo storefronts that use the concept and related intellectual property that Surratt developed in connection with

the first agreement.  Surratt disclaims that the agreement prevents either partner from opening or operating any tattoo parlor that does not use that concept or related intellectual property.[1]

{11}    Surratt alleges that, around this time, he requested that Brown distribute the Business's profits.  Brown refused the request and made "several" transfers out of the checking account.  (Compl. ¶ 21.)

{12}    In July 2011, Surratt took a two-week absence from overseeing the Business, during which time Brown requested a new employer identification number for the Business, transferred all operating income and profits to his personal bank account, changed passwords to all accounts associated with the Business, and instructed the Business's employees not to communicate with Surratt because he was no longer part of the Business.  Surratt was advised on his return in August 2011 that he would not be allowed in the Winston-Salem store.

{13}    On March 17, 2012, Brown opened another tattoo and piercing retail storefront in Greensboro under the name Signatured Soulz of Greensboro, LLC.  On September 18, 2012, Brown opened a third tattoo and piercing retail storefront in Greenville, North Carolina, using the name Déjà Vu Tattoo and Piercing.  Surratt alleges that, on this same day, Brown formed Déjà Vu Franchise Group, LLC for the purpose of franchising the Déjà Vu concept.  Within two years, Brown opened three more stores in Jacksonville, Fayetteville, and Winston-Salem, named Déjà Vu Tattoo and Piercing, Signatured Soulz, and Tattoo Therapy, LLC, respectively.

{14}    Surratt contends that each of these six additional locations are subject to the parties' joint venture and were opened and operated using intellectual property that Surratt created as part of their venture, including the retail store layout, the design of the retail stores, and the store logo design.

---

[1] When ruling upon a motion to dismiss pursuant to Rule 12(b)(6), a trial court may look to facts in addition to the complaint where the plaintiff, rather than the defendant, raises them.  *Norman v. Tradewinds Airlines, Inc.*, 286 F. Supp. 2d 575, 580 (M.D.N.C. 2003).

{15}    Surratt complains that Brown has refused to distribute profits to him or permit him to carry out his role as a member-manager of the LLC and partner of the partnership and has misappropriated intellectual property that Surratt created.

## III.    STANDARD OF REVIEW

{16}    On a motion to dismiss pursuant to Rule 12(b)(6), the Court inquires "whether, as a matter of law, the allegations of the complaint, treated as true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Crouse v. Mineo*, 189 N.C. App. 232, 237, 658 S.E.2d 33, 36 (2008) (quoting *Harris v. NCNB Nat'l Bank of N.C.*, 85 N.C. App. 669, 670, 355 S.E.2d 838, 840 (1987)).  The Court may grant a motion to dismiss under Rule 12(b)(6) where one of the following is true: (1) the complaint on its face reveals that no law supports the plaintiff's claim; (2) the complaint on its face reveals the absence of facts sufficient to make a good claim; or (3) the complaint discloses some fact that necessarily defeats the plaintiff's claim.  *Oates v. JAG, Inc.*, 314 N.C. 276, 278, 333 S.E.2d 222, 224 (1985).  For purposes of the Motion to Dismiss, the Court accepts the factual allegations of the Complaint as true without assuming the veracity of Plaintiff's legal conclusions.  *Walker v. Sloan*, 137 N.C. App. 387, 392, 592 S.E.2d 236, 241 (2000).

{17}    A trial court may review the developed record in deciding a motion under Rule 21.  N.C. R. Civ. P. 21 cmt. (noting that relevant language is "exact counterpart to federal Rule 21"); *see also Hershey Foods Corp. v. Padilla*, 168 F.R.D. 7, 9–11 (D.P.R. 1996) (reviewing developed record in deciding motion under Federal Rule of Civil Procedure 21); *Johnson v. Johnson*, 14 N.C. App. 40, 42, 187 S.E.2d 420, 421 (1972) ("[T]he Federal Rules are one of the sources of the North Carolina Rules; and decisions under them are pertinent for guidance and enlightenment . . . ." (citing *Sutton v. Duke*, 277 N.C. 94, 176 S.E.2d 161 (1970))).

# IV. ANALYSIS

## A. <u>The Motion to Strike</u>

{18}    Defendants contend that (1) Plaintiff misjoined the Moving Entity Defendants because the first two entities named do not exist and never have existed; (2) Tattoo Therapy, LLC was not a part of the agreements between the parties; and, (3) in any event, Plaintiff is not in privity of contract with any of the entities.  As noted, Defendant's counsel further asserts that Brown, individually, would be responsible for any liability Surratt is ultimately able to prove.

{19}    Surratt counters that it is premature to dismiss the Moving Entity Defendants before discovery, and that Brown or his various entities will suffer no prejudice should the entities remain parties pending discovery.

{20}    The Court, in its discretion, denies the Motion to Strike the otherwise surviving claims against the Moving Entity Defendants, without prejudice to reconsidering the motion on a more developed record.

## B. <u>The Contract Claims as to Some Defendants Survive the Motion to Dismiss</u>

{21}    The grounds Defendants argue in support of dismissing the contract claims distill to three issues: (1) whether the statute of limitations bars Plaintiff's contract-based claims; (2) whether any contract claim is barred because the alleged contracts lack sufficiently definite terms; and (3) whether section 75-4 of the North Carolina General Statutes applies to the oral agreements such that they are unenforceable because they are not in writing.  Defendants contend that, because the underlying contracts are unenforceable, all other claims fail. (Br. Supp. Mot. Dismissal Pursuant to Rule 12(b)(6) of the Rules of Civil Procedure ("Defs. Supp. Br.") 5.)

### i. The Statute of Limitations Bars Claims Arising from the First Oral Agreement as Against Mitchell Kendall Brown d/b/a Déjà Vu Tattoo and Piercing, Mitchell Kendall Brown d/b/a/ Signatured Soulz, and Tattoo Therapy, LLC

{22}    The statute of limitations for actions based "[u]pon a contract, obligation or liability arising out of a contract, express or implied" is three years. N.C. Gen. Stat. § 1-52(1) (2014). This includes claims for unjust enrichment. *Stratton v. Royal Bank of Can.*, 211 N.C. App. 78, 85, 712 S.E.2d 221, 228 (2011). A contract-based claim begins to accrue when the breach occurs. *PharmaResearch Corp. v. Mash*, 163 N.C. App. 419, 424, 594 S.E.2d 148, 152 (2004).

{23}    Brown's breach of the first alleged contract, if any, occurred in August 2011, when Brown excluded Surratt from the Winston-Salem storefront and transferred funds to his personal account, so that claims based on this contract must have been brought by August 2014. Brown's breach of the second agreement, if any, occurred no later than March 17, 2012, when he opened the second retail storefront in the manner Plaintiff alleges, utilizing the Déjà Vu concept. Claims based on the second agreement must therefore have been brought by at least March 17, 2015.[2]

{24}    Plaintiff did not bring any cause of action against any of the Moving Entity Defendants until March 9, 2015, more than three years after Brown's alleged breach of the first contract. Therefore, to the extent they pertain to Brown's alleged exclusion of Plaintiff from the initial Winston-Salem store and its profits, the claims for declaration of ownership, constructive trust, breach of contract, actual fraud, unjust enrichment, and dissolution and accounting are DISMISSED as against the

---

[2] To the extent Plaintiff argues that equitable estoppel would toll the statute of limitations, it does not affect the outcome. To toll the statute of limitations under this theory, the plaintiff must demonstrate, *inter alia*, that he lacked the knowledge and means of ascertaining the real facts. *Robinson v. Bridgestone/Firestone N.A. Tire, LLC*, 209 N.C. App. 310, 319, 703 S.E.2d 883, 889 (2011). Plaintiff should have learned the real facts concerning the alleged breach of the first contract in August 2011 and, for the second contract, no later than September 18, 2012, when Brown formed Déjà Vu Franchise Group, LLC and opened the third tattoo and piercing store using the Déjà Vu concept. In other words, the results are the same: claims for breach of the first oral agreement were not timely filed; claims arising from breach of the second oral agreement were timely filed.

Moving Entity Defendants. These claims against the Moving Entity Defendants, so long as based on the second agreement, were timely filed.

### ii.  Each of the Alleged Agreements Have Sufficient Terms to Survive an Early Dismissal Under Rule 12(b)(6)

{25}  "[A] valid contract requires (1) assent; (2) mutuality of obligation; and (3) definite terms." *Charlotte Motor Speedway, LLC v. Cty. of Cabarrus*, ___ N.C. App. ___, 748 S.E.2d 171, 176 (2013). In other words, the parties to the contract must have had a meeting of the minds as to all essential terms of the agreement. *Northington v. Michelotti*, 121 N.C. App. 180, 184, 464 S.E.2d 711, 714 (1995). These essential terms "must be sufficiently definite and certain, and a contract that 'leaves [sic] material portions open for future agreement is nugatory and void for indefiniteness.'" *Miller v. Rose*, 138 N.C. App. 582, 587–88, 532 S.E.2d 228, 232 (2000) (citation omitted) (quoting *MCB, Ltd. v. McGowan*, 86 N.C. App. 607, 609, 359 S.E.2d 50, 51 (1987)).

{26}  Defendants assert that the Complaint reveals that Surratt and Brown never agreed on what each were "specifically required" to do under the contracts, the time in which the work was to be performed, the duration of the oral contracts, and the mechanism with which to terminate the contracts. (Defs. Supp. Br. 11.) Defendants additionally argue that the oral agreements were not supported by adequate consideration.

{27}  The Court disagrees. As to the first agreement, the Complaint asserts agreement on the minimal essential terms that a store would be opened, Brown was to finance the venture for a thirty-percent share in its profits, and Surratt was to operate the store for a seventy-percent share in its profits. While there were perhaps additional terms that the parties had yet to negotiate, the North Carolina Court of Appeals has recognized that a similar contract was adequate to constitute an enforceable partnership agreement to open and operate a store according to the shared profit percentages. *Grub, Inc. v. Sammy's Seafood House & Oyster Bar, LLC.* No. COA14-861, 2015 N.C. App. LEXIS 330, *16–18 (Apr. 21, 2015). The *Grub* court determined that an agreement between two parties as to type of

business, share in profits, and financing, when coupled with corroborating evidence that each party undertook measures to perform, constituted a sufficient basis for a jury to determine that a valid partnership agreement existed. *Id.* *Grub* is sufficiently analogous to this case to be controlling.

{28} Through their second agreement, Brown and Surratt agreed to expand the Business as a joint venture with an equal share in profits. While many things were left open, Plaintiff indicated at oral argument that the agreement extends only to those storefronts utilizing the name, concept, design, and intellectual property developed in carrying out the first agreement. The evidence may develop in a manner that defeats Plaintiff's claims. The Court concludes, however, that, where stores have been opened, the basic terms of continuing a common plan based on equal profit distribution are adequate at this early stage to allow the claims to withstand dismissal. The claims are better tested by summary judgment against a more developed record.

### iii.     Section 75-4 Does Not Mandate Early Dismissal

{29} Defendants next argue that the second oral agreement is not enforceable because it is not in writing. Any "contract or agreement . . . limiting the rights of any person to do business anywhere in the State of North Carolina" must be in writing. N.C. Gen. Stat. § 75-4 (2014). Traditionally, courts have not held that section 75-4 defeats a contract unless the terms of the agreement "limit[] substantially" a party's right to do business. *Ashley Furniture Indus. v. Sangiacomo, N.A.*, 187 F.3d 363, 378 (4th Cir. 1999); *see also, e.g., Radio Elecs. Co. v. Radio Corp. of Am.*, 244 N.C. 114, 117, 92 S.E.2d 664, 666 (1956).

{30} Defendants contend that the second agreement substantially limits their right to do business within the meaning of section 75-4. In making the argument, Defendants assert that the breadth of the alleged agreement implies "that Brown would not have been able to engage in the type of business about which the Plaintiff is complaining, i.e., that is [sic] to operate a tattoo and piercing business . . . elsewhere in North Carolina." (Defs. Supp. Br. 6.)

{31}    An agreement that limits one's ability to do business to a single channel substantially limits the individual's right to do business in North Carolina, and requires a writing. *E.g.*, *Ashley Furniture*, 187 F.3d at 378; *Radio Elecs.*, 244 N.C. at 117, 92 S.E.2d at 666–67; *see also Big Red, LLC v. Davines S.p.A.*, 31 Fed. Appx. 216, 219–220 (4th Cir. 2002). On the other hand, where an oral agreement merely concerns the use of intellectual property, section 75-4 may not apply so long as other terms do not "substantially" limit the party's right to do business. *Ashley Furniture*, 187 F.3d at 378.

{32}    Plaintiff's narrowed description of the agreement does not prohibit Brown from operating in the tattoo and piercing industry without Surratt, so long as Brown does not utilize the name, concept, or related intellectual property created pursuant and subject to the agreements between the parties. The Court then concludes that any final determination of how section 75-4 might apply to the agreement must await further discovery as to the overall terms of the agreement. Stated otherwise, it is premature to determine whether the agreement under which Plaintiff seeks to recover must be in writing in order to be enforceable. Likewise, it is premature for the Court to determine whether certain portions of the agreement, but not others, are enforceable. *See Whittaker Gen. Med. Corp. v. Daniel*, 324 N.C. 523, 528, 379 S.E.2d 824, 828 (1989) ("If the contract is separable, however, and one part is reasonable, the courts will enforce the reasonable provision.").

### iv.    Plaintiff's Conversion Claim Should Be Limited to Defendant Brown, Individually, and Further Limited to Business Profits

{33}    Conversion is the "unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Peed v. Burleson's, Inc.*, 244 N.C. 437, 439, 94 S.E.2d 351, 353 (1956) (citation and internal quotation marks omitted). Conversion claims are subject to a three-year limitation period, N.C. Gen. Stat. § 1-52(4), which typically begins to run when the unauthorized assumption and exercise of ownership occurs. *Stratton*, 211 N.C. App. at 83, 712 S.E.2d at 227. However, when a defendant lawfully possesses or controls the property but

exercises unauthorized control over it, demand and refusal become necessary elements of conversion, meaning that the limitations period would not begin to run until after the defendant has refused the plaintiff's demand for return of the property. *Hoch v. Young*, 63 N.C. App. 480, 483, 305 S.E.2d 201, 203 (1983). Although the law is unclear as to the dividing line between tangible and intangible property in some instances, it is clear that only goods and personal property are subject to a conversion claim; intangible interests, such as business opportunities or expectancy interests are not subject to conversion. *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 414, 537 S.E.2d 248, 264 (2000); *HCW Ret. & Fin. Servs., LLC v. HCW Emp. Benefit Servs., LLC*, 2015 NCBC LEXIS 73, *57 (N.C. Super. Ct. July 14, 2015).

{34}     Plaintiff alleges that Brown converted Plaintiff's "profits and/or other distributions, his right to partnership property, his membership interest in the LLC/Partnership, and his right to participate in management of the LLC/Partnership." (Compl. ¶¶ 43–49.) With the exception of profits and distributions, the property interests asserted are intangible. Plaintiff's potential conversion claim is then limited to profits and distributions. Whether the Business's profits and distributions are ultimately subject to Plaintiff's conversion claim will depend on whether discovery bears out that the money in which Surratt asserts an interest is properly identifiable as recoverable profits from the Business. *Variety Wholesalers, Inc. v. Salem Logistics Traffic Servs., LLC*, 365 N.C. 520, 528–29, 723 S.E.2d 744, 750–51 (2012); *Wake Cty. v. Hotels.com, L.P.*, ___ N.C. App. ___, 762 S.E.2d 477, 489–90 (2014).

{35}     Plaintiff's brief opposing the Motion to Dismiss implies that he alleged a conversion claim against the Moving Entity Defendants. (Pl.'s Resp. Defs.' Mot. Dismiss ("Pl. Resp. Br.") 18 ("[D]efendants have improperly withheld [Surratt's] property . . . . This complies with the two essential elements of a claim for conversion.").) However, the Complaint does not allege that any of the Moving

Entity Defendants converted Plaintiff's property.[3] (Compl. ¶¶ 43–49.) The conversion claim is then limited to Brown, and to the extent Plaintiff asserts a conversion claim against the Moving Entity Defendants, any such claim is DISMISSED.

### v. Plaintiff's Fraud-Based Claims Are Not Stated with Sufficient Particularity

{36} A claim of actual fraud requires: "(1) [f]alse representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, (5) resulting in damage to the injured party." *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974). Under Rule 9(b), a plaintiff must plead a fraud claim with particularity. N.C. R. Civ. P. 9(b). To do so, a claimant must allege "time, place and content of the fraudulent representation, identity of the person making the representation and what was obtained as a result of the fraudulent acts or representations." *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1981). Where the fraud alleged is in the nature of concealment, the complaint "must specifically allege the time and occasion of the misrepresentation or concealment of material fact and the individual who made the misrepresentation or concealment in order to satisfy the requirements of Rule 9(b)." *Trull v. Cent. Carolina Bank & Trust Co.*, 117 N.C. App. 220, 224, 450 S.E.2d 542, 545 (1994).

{37} In the present action, Plaintiff brings claims for actual fraud and misrepresentation, which are subject to the above requirements. Plaintiff, however, only alleges generally that Brown "intentionally misrepresented the revenues, profits, losses and whereabouts of funds to Plaintiff to disguise his own actions."[4] (Compl. ¶ 61.) The Complaint neither indicates when Brown misrepresented the

---

[3] Any conversion claim against these Defendants would be time-barred as to profits and distributions from the initial Winston-Salem storefront.

[4] The allegations under the Complaint's heading for "Actual and Constructive Fraud" are that Brown failed to act in good faith, was disloyal to Surratt, failed to act openly and honestly with Surratt, engaged in self-dealing, and committed "other wrongful conduct." (Compl. ¶¶ 79–80.) As none of these allegations concern a false misrepresentation of material fact, but rather breaches of certain fiduciary duties, the Court has not listed them as allegations in support of an actual fraud claim.

Business's finances, nor the content of any such misrepresentation, save that in April 2011, Brown did not distribute profits to Surratt upon request. (Compl. ¶ 21.) If Plaintiff wishes to pursue his fraud claims, he must amend his Complaint within twenty days of this order and allege those claims with specificity adequate to satisfy Rule 9(b), or such claims will be dismissed.

### vi.    Plaintiff's Fiduciary Duty and Constructive Fraud Claims Survive the Motion to Dismiss

{38}    Having determined that Plaintiff adequately pled the existence of an enforceable partnership or joint venture agreement, the Court cannot presently dismiss the claims for breach of fiduciary duty and constructive fraud. To properly plead a breach of fiduciary duty, a plaintiff must allege the existence of a fiduciary relationship between the parties and a breach of the defendant's duty. *S.N.R. Mgmt. Corp. v. Danube Partners 141, LLC*, 189 N.C. App. 601, 613, 659 S.E.2d 442, 451 (2008). To properly plead constructive fraud, a plaintiff must allege "(1) a relationship of trust and confidence, (2) that the defendant took advantage of that position of trust in order to benefit himself, and (3) that plaintiff was, as a result, injured." *Ward v. Fogel*, ___ N.C. App. ___, 768 S.E.2d 292, 300 (2014) (quoting *White v. Consol. Planning, Inc.*, 166 N.C. App. 283, 294, 603 S.E.2d 147, 156 (2004)), *review denied*, ___ N.C. ___, 771 S.E.2d 302 (2015).

{39}    Plaintiff has met his pleading burden under the liberal standards of Rule 12(b)(6). Partners are accountable to one another as fiduciaries. N.C. Gen. Stat. § 59-51 (2014); *see also Cheape v. Town of Chapel Hill*, 320 N.C. 549, 562, 359 S.E.2d 792, 799–800 (1987) (noting that joint venturers stand in a fiduciary relationship with one another). Plaintiff's allegations are then adequate to form the basis for constructive fraud and breach of fiduciary duty claims. Accordingly, as to these causes of action, the Motion to Dismiss is DENIED.

### vii.    The Remaining Contract-Based Claims Survive the Motion to Dismiss

{40}    As the Court has determined that the breach of contract claim may proceed, Plaintiff's other contract-based claims—declaration of interest;

constructive trust; unjust enrichment, as an alternative to contract; dissolution and accounting; and declaratory judgment—also survive the Motion to Dismiss.

{41}   However, the Court is not convinced that the remaining claims are intentionally or properly alleged against the Moving Entity Defendants.  Plaintiff admits that the Moving Entity Defendants are not necessary parties to his declaration-of-interest claim.  (Pl. Resp. Br. 4.)  If Plaintiff wishes to present claims against the Moving Entity Defendants, he shall specify those claims and his grounds for asserting them against the Moving Entity Defendants in the Amended Complaint the Court has given him leave to file.

## V.   CONCLUSION

{42}   For the foregoing reasons:

1. The Motion to Strike is DENIED;

2. Plaintiff's UDTP claim is DISMISSED;

3. Plaintiff's claims against the Moving Entity Defendants that depend upon the oral agreement reached in May 2010 are DISMISSED;

4. The conversion claim, if any, alleged against the Moving Entity Defendants is DISMISSED;

5. In all other respects, the Motion to Dismiss is DENIED;

6. Plaintiff is given leave to file an Amended Complaint within twenty days from the date of this Order & Opinion that conforms with this Order & Opinion.

IT IS SO ORDERED, this the 27th day of July, 2015.


/s/ James L. Gale
James L. Gale
Chief Special Superior Court Judge
  for Complex Business Cases