Bourgeois v. LaPelusa, 2022 NCBC 56.

STATE OF NORTH CAROLINA

IREDELL COUNTY

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION
21 CVS 89

SHANE BOURGEOIS and PITBOX
AUTO SALES LLC,

Plaintiffs,

v.

JAMES MATTHEW LAPELUSA, JR.;
BRIAN PERRY; RALPH ERSKINE
STEVENSON III; THE PIT BOX, LLC;
and AMERICAN AUTOMOTIVE
GROUP, INC.,

Defendants.

**ORDER AND OPINION ON
DEFENDANTS' MOTIONS TO
DISMISS AND PLAINTIFFS' MOTION
TO AMEND**

1.　**THIS MATTER** is before the Court on three motions: Defendants' Motion to Dismiss, (ECF No. 13), Motion to Dismiss of Defendant Ralph Stevenson III ("Stevenson's Motion"), (ECF No. 15), and Plaintiffs' Motion to Amend and to Supplement Complaint (the "Motion to Amend"), (ECF No. 24).

2.　Defendants James Matthew LaPelusa, Jr. ("LaPelusa"), Brian Perry ("Perry"), Ralph Erskine Stevenson III ("Stevenson"), The Pit Box, LLC ("The Pit Box"), and American Automotive Group, Inc. ("AAG," collectively, "Defendants") have moved to dismiss Plaintiffs' First, Second, Third, Sixth, Seventh, Eighth, and Ninth

Claims for Relief pursuant to Rules 12(b)(1) and 12(b)(6) of the North Carolina Rules of Civil Procedure (the "Rule(s)").

3. Separately, Stevenson has moved to dismiss Plaintiff Shane Bourgeois' ("Bourgeois") Fifth Claim for Relief pursuant to Rule 12(b)(6).[1]

4. Lastly, Bourgeois[2] has moved to amend and supplement the Complaint pursuant to Rule 15(a).

5. For the reasons stated below, Defendants' Motion to Dismiss is **GRANTED** in part and **DENIED** in part. Stephenson's Motion to Dismiss is **GRANTED** in part and **MOOTED** in part. Bourgeois' Motion to Amend is **DENIED.**

*David P. Parker, PLLC, by David Payne Parker, for Plaintiffs Shane Bourgeois and Pitbox Auto Sales LLC.*

*Higgins Benjamin PLLC, by Gilbert J. Andia, Jr. and Robert G. McIver, for Defendants James Matthew LaPelusa, Jr., Brian Perry, Ralph Erskine Stevenson III, The Pit Box, LLC, and American Automotive Group, Inc.*

Earp, Judge.

## I.   INTRODUCTION

6. The individual parties in this case are experienced in various aspects of the used car business. In late 2019, they decided to combine their efforts. Unfortunately, during the months that followed, they did not achieve the success they

---

[1] Stevenson also moved to dismiss Bourgeois' Fourth Claim for Relief for legal malpractice, asserted against Stevenson alone. (*See* ECF No. 15.) Bourgeois has since voluntarily dismissed that claim without prejudice, (*see* ECF No. 41), mooting that aspect of Stevenson's Motion.

[2] Although titled as "Plaintiffs' Motion to Amend and to Supplement Complaint," the body of the referenced pleading states that it is Bourgeois' motion. (*See* ECF No. 24.)

had envisioned. Now, as some of the parties attempt to unravel what they created, tempers have flared. There is significant disagreement over exactly what the parties' agreement was at the start of the arrangement and how any remaining assets should be distributed.

## II. FACTUAL AND PROCEDURAL BACKGROUND

7. The Court does not make findings of fact when ruling on either a motion to dismiss or a motion to amend. It recites below those factual allegations from the Complaint and the proposed amendment that are relevant and necessary to the Court's determination of the motions before it. *See e.g., Krawiec v. Manly*, 370 N.C. 602, 606 (2018).

8. Bourgeois is a citizen and resident of Iredell County, North Carolina. (Ver. Compl. ¶ 1, [hereinafter "Compl."], ECF No. 3.)

9. Perry is a citizen and resident of Mecklenburg County, North Carolina. (Compl. ¶ 4.)

10. LaPelusa is a citizen and resident of Mecklenburg County, North Carolina. (Compl. ¶ 3.)

11. Stevenson is a citizen and resident of Nash County, North Carolina, who has been licensed to practice law in the state of North Carolina since 2011. (Compl. ¶ 5.)

12. The Pit Box is a North Carolina LLC organized on 10 April 2014. Its original members were Bourgeois and Perry. (Compl. ¶ 6.) It has not identified a document as its operating agreement. (Compl. ¶ 11.)

13.     AAG is a North Carolina corporation incorporated on 3 February 2015. (Compl. ¶ 7.)  LaPelusa is the President of AAG.  (Compl. ¶ 9.)  No bylaws for AAG exist.  (Compl. ¶ 15.)

14.     Pitbox Auto Sales LLC ("Auto Sales") is a North Carolina LLC. Bourgeois is a member of Auto Sales.  (Compl. ¶ 2.)

15.     In December 2019, Bourgeois and Perry, together with LaPelusa, decided to "combine" The Pit Box and AAG.  (Compl. ¶ 8.)  The group executed a short document titled, "Resolution of Intention for the Pit Box" ("The Pit Box Resolution").  The Pit Box Resolution had the purpose of "combining efforts of the two entities to conduct joint business operations and streamline operations."[3]  (Mem. Supp. Defs.' Mot. Dismiss Ex. D, [hereinafter "Defs.' Brief"], ECF No. 14.)  It also provided that ownership of The Pit Box would be divided as follows, with each person referred to as a "Member Manager":

    a.  Bourgeois 30 shares 30%

    b.  Perry 30 shares 30%

    c.  LaPelusa 30 shares 30%

    d.  Stevenson 10 shares 10%

---

[3] On a motion to dismiss, the Court may consider documents outside the complaint "which are the subject of a plaintiff's complaint and to which the complaint specifically refers[,]" without converting the motion to a motion for summary judgement. *Oberlin Capital, L.P. v. Slavin*, 147 N.C. App. 52, 60 (2001) (citing *Robertson v. Boyd*, 88 N.C. App. 437, 441 (1988)). This is true even when the documents are presented by the defendant. *See Holton v. Holton*, 258 N.C. App. 408, 419 (2018) ("[A] document that is the subject of a plaintiff's action that he or she specifically refers to in the complaint may be attached as an exhibit by the defendant and properly considered by the trial court without converting a 12(b)(6) motion into one of summary judgment.").

(Compl. ¶ 8.) The Pit Box Resolution further stipulated that "any future resolution must be approved by a seventy percent (70%) stock ownership vote." (Compl. ¶ 12.)

16. In a similar manner, LaPelusa, acting as President of AAG, executed a one-page document titled, "AUTOMOTIVE GROUP, INC. TO ENTER INTO MANAGEMENT AGREEMENT WITH THE PIT BOX, LLC," (the "AAG Resolution," collectively, with The Pit Box Resolution, the "Resolutions of Intent"). (Compl. ¶ 9.) The AAG Resolution states that it was executed in return for thirty (30) "stock certificates" of The Pit Box to LaPelusa and thirty (30)[4] "stock certificates" to Stevenson, who was to be named general counsel and registered agent for The Pit Box. (Compl. ¶ 9.)

17. Stevenson drafted both Resolutions of Intent. (Compl. ¶ 10.) While both documents mention a contractual agreement that was "hereby incorporated by reference[,]" the parties never executed the referenced contract, and no contract is attached to the Complaint. (Compl. ¶ 14.)

18. Plaintiffs allege that Stevenson had a conflict of interest because he was a 10% member of The Pit Box and also an attorney for both The Pit Box and AAG. (Compl. ¶ 24.) And despite his allegedly conflicting roles, Stevenson did not secure a conflict-of-interest waiver. (Compl. ¶ 10.) Plaintiffs further claim that Stevenson failed to document the terms of the parties' agreement or to draft an operating

---

[4] Contrary to this allegation, The Pit Box Resolution states that Stevenson was to receive 10 shares (10%).

agreement for The Pit Box, thereby exposing AAG, The Pit Box, and Bourgeois to potential liability, all while unjustly enriching himself. (Compl. ¶ 26.)

19. Plaintiffs allege that LaPelusa fraudulently induced Bourgeois to "merge" The Pit Box with AAG by falsely telling Bourgeois that AAG had "approximately" $34,000 in debt, when in fact it had additional debts. (Compl. ¶ 16.)

20. After the Resolutions of Intent were executed, Bourgeois, with the help of Perry, paid off some of AAG's debts. He did so because AAG claimed its debts were now the obligation of The Pit Box. Bourgeois paid approximately $36,000 to some creditor(s) and another $167,000 to a wholesale auto auction company. (Compl. ¶ 19.)

21. As time went on, frustrations between Bourgeois and LaPelusa developed and intensified. LaPelusa claimed personal ownership of various vehicles that Bourgeois alleges were owned by The Pit Box. Plaintiffs allege, among other things, that LaPelusa, complicit with Stevenson and Perry, acted in bad faith by: conducting the business of The Pit Box without notifying Bourgeois of any meetings or agendas of meetings, generating inaccurate profit and loss statements for The Pit Box and AAG, banning Bourgeois from the business premises, stopping payment on checks sent to pay debts of the entities, diverting proceeds from the sales of vehicles to his personal use, and converting Bourgeois' funds to pay AAG and LaPelusa's debts. (Compl. ¶¶ 20–21.) In addition, Plaintiffs allege that LaPelusa, complicit with Stevenson and Perry, converted the proceeds of Auto Sales' SBA loan to his own use or for the benefit of AAG. (Compl. ¶ 21(n).)

22. On 20 December 2020, LaPelusa sent Bourgeois an email signed by Stevenson in his capacity as counsel for AAG. Copied on the email was another attorney named Tyler Pierce ("Pierce"). Notably, the email stated that the agreement between The Pit Box and AAG had been "mutually dissolved," Bourgeois' "association" was terminated, and all materials belonging to AAG were to be returned to LaPelusa. (Compl. ¶ 22.)

23. On the same day, Pierce wrote to Bourgeois disclosing that he had been retained to dissolve and unwind The Pit Box. The letter stated that on 16 December 2020, a 70% super-majority of The Pit Box members resolved to dissolve The Pit Box effective immediately, and that articles of dissolution had been formally adopted and submitted to the Secretary of State's Office for immediate filing. (Compl. ¶ 23.) In addition, Pierce told Bourgeois that The Pit Box's liabilities apparently exceeded its assets. (Compl. ¶ 23.)

24. Bourgeois never received notice of a members' meeting to vote on dissolution, and he did not agree to the dissolution of The Pit Box. (Compl. ¶¶ 24–25.)

25. Bourgeois alleges that, on 22 December 2020, he made a derivative demand on both The Pit Box and AAG. (Prop. Am. Compl. ¶ 41, ECF No. 25.1.) However, the demand itself, while purporting to be directed to both entities, ultimately makes a demand only on The Pit Box. (Answ. and Counterclms. Ex. E, ECF No. 17.)

26. Plaintiffs initiated this action by filing their Complaint approximately three weeks later, on 13 January 2021. (ECF No. 3.) Plaintiffs allege that Defendants breached their fiduciary duties, converted funds to their own benefit, and were unjustly enriched by their actions. In addition to damages, Plaintiffs seek injunctive relief, as well as a judicial dissolution of The Pit Box. (*See generally* Compl. ¶¶ 31–79.)

27. Plaintiffs filed a Notice of Designation pursuant to N.C.G.S. § 7A-45.4(a) on 13 January 2021, (ECF No. 4), and this case was designated a mandatory complex business case by Order of the Chief Justice of the Supreme Court of North Carolina on 15 January 2021. (ECF No. 1.) It was assigned to the Honorable Michael L. Robinson on 15 January 2021, (ECF No. 2), and reassigned to the undersigned on 6 May 2021. (ECF No. 20.)

28. Defendants collectively, and Stevenson individually, filed their Motions to Dismiss on 19 April 2021. (ECF Nos. 12–13.) Defendants separately filed their Answer and Counterclaims later that same day. (ECF No. 17.) On 4 June 2021, Plaintiffs filed their Motion to Amend seeking to add derivative actions. (ECF No. 24.)

29. A hearing was held on the Motions during which all parties were represented by counsel. (*See* ECF No. 35.) The Motions are now ripe for disposition.

## III. LEGAL STANDARD

30. When ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court determines "whether, as a matter of law, the allegations of the complaint, treated as

true, are sufficient to state a claim upon which relief may be granted under some legal theory, whether properly labeled or not." *Harris v. NCNB Nat'l Bank*, 85 N.C. App. 669, 670 (1987). "[A] statement of claim is adequate if it gives sufficient notice of the claim asserted to enable the adverse party to answer and prepare for trial, to allow for the application of the doctrine of *res judicata*, and to show the type of case brought." *Id.* (internal quotation marks omitted).

31.    Dismissal of a claim is proper "(1) when the complaint on its face reveals that no law supports plaintiff's claim; (2) when the complaint reveals on its face the absence of fact sufficient to make a good claim; [or] (3) when some fact disclosed in the complaint necessarily defeats the plaintiff's claim." *Oates v. JAG, Inc.*, 314 N.C. 276, 278 (1985). "[A] complaint should not be dismissed for insufficiency unless it appears to a certainty that plaintiff is entitled to no relief under any state of facts which could be proved in support of the claim." *Sutton v. Duke*, 277 N.C. 94, 103 (1970) (emphasis omitted). The Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Good Hope Hosp., Inc. v. N.C. Dep't of Health & Human Servs.*, 174 N.C. App. 266, 274 (2005) (quoting *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002)). However, the Court must construe the complaint liberally and accept all allegations as true for purposes of ruling on the motion. *See Laster v. Francis*, 199 N.C. App. 572, 577 (2009).

32.    "Standing is a necessary prerequisite to a court's proper exercise of subject matter jurisdiction." *Aubin v. Susi*, 149 N.C. App. 320, 324 (2002). Standing

arguments may be presented under both Rule 12(b)(1) and Rule 12(b)(6). *See Fairfield Harbour Prop. Owners Ass'n v. Midsouth Golf, LLC*, 215 N.C. App. 66, 72 (2011). In determining a motion to dismiss for lack of standing, the allegations should be taken as true and read in the light most favorable to the non-moving party. *Mangum v. Raleigh Bd. of Adjustment*, 362 N.C. 640, 644 (2008). In ruling on a motion to dismiss for lack of standing pursuant to Rule 12(b)(1), the Court may consider matters outside the pleadings to determine whether subject matter jurisdiction exists. *Keith v. Wallerich*, 201 N.C. App. 550, 554 (2009). In either case, Plaintiffs have the burden of proving that they have standing to bring their claims. *Neuse River Found., Inc. v. Smithfield Foods, Inc.*, 155 N.C. App. 110, 113 (2002). *See also Wirth v. Sunpath, LLC*, 2017 NCBC LEXIS 84, at *9 (N.C. Super. Ct. Sept. 14, 2017).

33. Finally, Rule 15(a) provides that leave to amend a complaint "shall be freely given when justice so requires." N.C. R. Civ. P. 15(a). While there is no more liberal canon in the Rules than that leave to amend "shall be freely given when justice so requires[,]" *Vaughan v. Mashburn*, 371 N.C. 428, 434 (2018) (citing Wilson, *Civil Procedure* § 15-3, at 15-5), "the right to amend pursuant to Rule 15 is not unfettered." *Howard v. IOMAXIS, LLC*, 2021 NCBC LEXIS 116, at *17 (N.C. Super Ct. Dec. 22, 2021). "Reasons justifying denial of an amendment include: (1) undue delay, (2) bad faith, (3) undue prejudice, (4) futility of amendment, and (5) repeated failure to cure defects by previous amendments." *Window World of St. Louis, Inc. v. Window World,*

*Inc.*, 2015 NCBC LEXIS 79, at **18 (N.C. Super. Ct. Aug. 10, 2015) (citing *Martin v. Hare*, 78 N.C. App. 358, 361 (1985)).

34. "Ultimately, whether to allow an amendment rests in the trial judge's discretion." *KRG New Hill Place, LLC v. Springs Inv'rs, LLC*, 2015 NCBC LEXIS 20, at *8 (N.C. Super. Ct. Feb. 27, 2015) (citing *House of Raeford Farms, Inc. v. Raeford*, 104 N.C. App. 280, 282 (1991)).

## IV.   ANALYSIS

35. Defendants have brought two motions to dismiss the remaining claims asserted in the Complaint. In response, Plaintiffs defend the claims they originally stated while also seeking to add derivative claims on behalf of The Pit Box and AAG. Because the test for futility with respect to a proposed amendment mirrors the sufficiency test of Rule 12(b)(6), the Court addresses each of the claims, asserted and proposed, using this test. *See Smith v. McRary*, 306 N.C. 664, 671 (1982) (a motion for leave to amend is properly denied when "plaintiff's proposed amendment could not withstand a motion to dismiss for failure to state a claim"); *Simply the Best Movers, LLC v. Morrins' Moving Sys.*, 2016 NCBC LEXIS 28, at **5–6 (N.C. Super. Ct. April 6, 2016) ("The futility standard under Rule 15 is essentially the same standard used in reviewing a motion to dismiss under Rule 12(b)(6), but provides the Court liberal discretion to find that an amendment lacks futility.").

A. Breach of Fiduciary Duty

36. Bourgeois' First Claim for Relief is based on an alleged breach of fiduciary duty. To state this claim, Bourgeois must plead the existence of a fiduciary

duty, a breach of that duty, and injury proximately caused by the breach. *See Green v. Freeman*, 367 N.C. 136, 141 (2013). Thus, an essential element of a claim for breach of fiduciary duty is the existence of such a duty owed by Defendants to Bourgeois. *See Dalton v. Camp*, 353 N.C. 647, 651 (2001).

37. "[A] fiduciary relationship is generally described as arising when 'there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence.'" *Dallaire v. Bank of Am., N.A.*, 367 N.C. 363, 367 (2014) (quoting *Green*, 367 N.C. at 141). "North Carolina recognizes two types of fiduciary relationships: *de jure*, or those imposed by operation of law, and *de facto*, or those arising from the particular facts and circumstances constituting and surrounding the relationship." *Hager v. Smithfield E. Health Holdings, LLC*, 264 N.C. App. 350, 355 (2019).

38. LLCs are creatures of contract, and the members may choose to impose fiduciary duties on one another by agreement. *See, e.g., Strategic Mgmt. Decisions, LLC v. Sales Performance Int'l, LLC*, 2017 NCBC LEXIS 69, at *10–11 (N.C. Super. Ct. Aug. 7, 2017) ("The rights and duties of LLC members are ordinarily governed by the company's operating agreement, not by general principles of fiduciary relationships."); *see also* N.C.G.S. § 57D-2-30(a). Absent such an agreement, however, the general rule is that members of an LLC "do not owe a fiduciary duty to each other[.]" *Kaplan v. O.K. Techs., L.L.C.*, 196 N.C. App. 469, 473 (2009).

39. Bourgeois alleges that Defendants breached their fiduciary duties to him by, among other things, "meeting, hiring attorneys, constructing the accounts of

the business, [and] hiring counsel" behind Bourgeois' back and "with the intention of deceiving Bourgeois[.]" (Compl. ¶¶ 33–34.) In addition, the Complaint contains a laundry list of other alleged sleights and misdeeds. (*See* Compl. ¶¶ 21–29.)

40. Defendants cite *Kaplan* for the proposition that, generally, members of an LLC do not owe a fiduciary duty to one another. (Defs.' Brief 6–7.) But even if a fiduciary duty exists, Defendants argue that Bourgeois has not alleged injuries that could support an "individual recovery," and his claim is "fundamentally a derivative claim" on behalf of The Pit Box. (Defs.' Brief 7.)

41. The Court agrees that no *de jure* fiduciary duty exists between the members of The Pit Box. There is no allegation that The Pit Box has an operating agreement establishing member-to-member fiduciary duties. The Resolutions of Intent do not impose such duties. In the absence of an agreement establishing otherwise, the default rule applies: members of an LLC generally do not owe a fiduciary duty to each other. *Kaplan*, 196 N.C. App. at 473.

42. Nor has Bourgeois alleged facts sufficient to raise as an issue the existence of a *de facto* fiduciary relationship. "The standard for finding a *de facto* fiduciary relationship is a demanding one: Only when one party figuratively holds all the cards—all the financial power or technical information, for example—have North Carolina courts found that the special circumstance of a fiduciary relationship has arisen." *Lockerman v. S. River Elec. Mbrshp. Corp.*, 250 N.C. App. 631, 636 (2016) (internal quotation marks omitted). Mere influence over another's affairs is insufficient. *See id.*

43.     The allegations here fail to meet *Lockerman's* demanding standard. Bourgeois has neither alleged that he trusted his fellow members nor that, as a result of that trust, his fellow members had dominion and control over the business. Both are necessary for a *de facto* fiduciary relationship to exist. *See Dalton v. Camp*, 353 N.C. 647, 652 (2001) (there must be "confidence reposed on one side, and resulting domination and influence on the other" (quoting *Abbitt v. Gregory*, 201 N.C. 577, 598 (1931) (emphasis omitted))). While Bourgeois claims that Defendants acted in bad faith and with the intention to deceive, nowhere does he allege that he placed a "special confidence" in Defendants that resulted in "domination and influence on one side of the relationship." *Broussard v. Meineke Disc. Muffler Shops, Inc.*, 155 F.3d 331, 349 (4th Cir. 1998) (internal quotation marks omitted).

44.     To the contrary, Bourgeois alleges that he held a 30% interest in The Pit Box as a "Member *Manager*." (Compl. ¶ 8 (emphasis added).) As a manager himself, Bourgeois had some level of control. Moreover, The Pit Box Resolution specifically required that future resolutions be approved by a super-majority, a seventy percent (70%) ownership vote. (Compl. ¶ 12.) Therefore, it is apparent from Bourgeois' own allegations that no one member dominated the governance of The Pit Box. (Compl. ¶ 12.) In short, Bourgeois may have been mistreated by the other members, but it happened while he was holding—at the very least—a card or two. In that circumstance, no *de facto* fiduciary duty arises. *See Lockerman*, 250 N.C. App. at 636.

45. Without the existence of a fiduciary relationship there can be no claim for breach. *See Azure Dolphin, LLC v. Barton*, 371 N.C. 579, 599 (2018) ("In the event that a party fail[s] to allege any special circumstances that could establish a fiduciary relationship, dismissal of a claim which hinges upon the existence of such a relationship would be appropriate." (citation and internal quotation marks omitted)). The Court therefore **GRANTS** Defendants' Motion to Dismiss Bourgeois' First Claim for Relief, Breach of Fiduciary Duty, and Bourgeois' First Claim for Relief is **DISMISSED** with prejudice.

B. Judicial Dissolution

46. Pursuant to N.C.G.S. § 57D-6-02(2), "[t]he superior court may dissolve an LLC in a proceeding brought by . . . [a] member, if it is established that (i) it is not practicable to conduct the LLC's business in conformance with the operating agreement and this Chapter or (ii) liquidation of the LLC is necessary to protect the rights and interests of the member." N.C.G.S. § 57D-6-02(2). Bourgeois maintains in the Third Claim for Relief that judicial dissolution is appropriate under both prongs of the statute. (Compl. ¶ 48.)

47. The allegations portray a tumultuous association between Bourgeois and Defendants LaPelusa, Stevenson, and Perry. (*See* Compl. ¶ 21.) Indeed, Bourgeois' allegations describe secret meetings, false financial statements, diverted sales proceeds, "acts of aggression," and banishment from the business premises. (Compl. ¶ 21(f)–(k).)

48. In response, Defendants state that The Pit Box has already been dissolved[5] and they suggest that a stay should be entered while an "independent accountant" winds up its affairs and submits a report determining the respective rights of each member. (Defs.' Brief 9–10.)

49. The Court concludes that Bourgeois' allegations of misconduct, if true, could support judicial dissolution of the entity to protect Bourgeois' interest and that, under the circumstances, it would be premature to dismiss this claim. *See Bennett v. Bennett*, 2019 NCBC LEXIS 19, at *34–35 (N.C. Super. Ct. March 15, 2019); *Vanguard Pai Lung, LLC v. Moody*, 2019 NCBC LEXIS 39, at *24 (N.C. Super. Ct. June 19, 2019).

50. Therefore, the Court, in its discretion, **DENIES** Defendants' Motion to Dismiss Plaintiffs' Third Claim for Relief, Judicial Dissolution.

C. <u>Converting Stevenson to an Economic Interest Holder</u>

51. Bourgeois' Fifth Claim for Relief is titled, "Converting Stevenson to An Economic Interest Holder." At the hearing, counsel for Bourgeois explained that this claim was brought to strip Stevenson of his membership rights in The Pit Box. *See* MTD Hr'g Tr. 20:25–23:12. Bourgeois cites no law in support of this requested relief.

---

[5] The allegations in the Complaint indicate that articles of dissolution were prepared, formally adopted, and submitted to the Secretary of State's Office for "immediate filing." (Compl. ¶ 23(c).) However, the Court does not find the above-mentioned filing in the Secretary of State's records. *See* North Carolina Secretary of State, https://www.sosnc.gov/online_services/search/Business_Registration_Results (last visited Sept. 23, 2022). Therefore, for purpose of this Motion, the Court does not treat The Pit Box as having been dissolved. *See* N.C.G.S. § 57D-6-09 ("Upon dissolution of an LLC, the LLC shall deliver articles of dissolution to the Secretary of State for filing.").

Instead, he alleges that Stevenson had a conflict of interest and violated the "Canon of Ethics" for attorneys. (Compl. ¶ 62.) However, "North Carolina Rules of Professional Conduct cannot be used to establish civil liability." *Inland Am. Winston Hotels, Inc. v. Winston*, 2010 NCBC LEXIS 21, at **22 (N.C. Super. Ct. Nov. 24, 2010). *See* R. Prof. Conduct N.C. St. B. 0.2[7] ("Violation of a Rule should not give rise itself to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached."); *Webster v. Powell,* 98 N.C. App. 432, 439 ("[A] breach of a provision of the Code of Professional Responsibility is not 'in and of itself . . . a basis for civil liability. . . .' " (quoting *McGee v. Eubanks*, 77 N.C. App. 369, 374 (1985))).

52.     Stevenson's Motion to Dismiss is therefore **GRANTED**, and Bourgeois' Fifth Claim for Relief is **DISMISSED** with prejudice.

D. Conversion

53.     Plaintiffs separately assert two claims for conversion: one by Bourgeois against Defendants for depriving him "of the sums of $160,288" (Compl. ¶ 65), and another by Auto Sales against Defendants for depriving it "of the sum of $43,000" (Compl. ¶ 68.)

54.     Even though the Complaint advances these conversion claims against "Defendants" collectively, the factual allegations identify only LaPelusa, Stevenson, and Perry as the alleged wrongdoers. (Compl. ¶ 21, 21(n), 21(o).) Absent any facts to support it, the claim of conversion against The Pit Box and AAG is conclusory and does not survive Rule 12(b)(6). *See Good Hope Hosp., Inc.*, 174 N.C. App. at 274 (the

Court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences").

55.    Furthermore, the claim against LaPelusa, Stevenson, and Perry does not satisfy the pleading requirements to state a cause of action for conversion. Plaintiffs must plead: "(1) the unauthorized assumption and exercise of the right of ownership; (2) over the goods or personal property; (3) of another; (4) to the exclusion of the rights of the true owner." *Estate of Graham v. Morrison*, 168 N.C. App. 63, 72 (2005) (quoting *Di Frega v. Pugliese*, 164 N.C. App. 499, 508 (2004)); *accord Spinks v. Taylor*, 303 N.C. 256, 264 (1981).

56.    "The essence of conversion is not the acquisition of property by the wrongdoer, but a wrongful deprivation of it to the owner." *Bartlett Milling Co. v. Walnut Grove Auction & Realty Co.*, 192 N.C. App. 74, 86 (2008) (quoting *Lake Mary L.P. v. Johnston,* 145 N.C. App. 525, 532 (2001)). Therefore, "[i]n cases where the defendant comes into possession of the plaintiff's property lawfully, the plaintiff must show that it made a demand for the return of the property that was refused by the defendant." *Morris Int'l, Inc. v. Packer*, 2021 NCBC LEXIS 99, at **28 (N.C. Super Ct. Nov. 2, 2021). *See also Hoch v. Young*, 63 N.C. App. 480, 483 (1983) ("Where there has been no wrongful taking or disposal of the goods, and the defendant has merely come rightfully into possession and then refused to surrender them, demand and refusal are necessary to the existence of the tort." (quoting William L. Prosser, *Handbook of the Law of Torts* § 15, at 89–90 (4th Ed. 1971))).

57. Regarding Bourgeois' claim for conversion, the Complaint alleges that Bourgeois wrote a check for $160,288 and gave it to LaPelusa intending that it be a loan or for additional equity in The Pit Box, but he received nothing of value for it. (Compl. ¶ 21(o).) The Complaint further states that Defendants wrongfully used the money to pay off "private" or "corporate" debts of AAG or LaPelusa, leaving Bourgeois with nothing. (Compl. ¶ 21(o).) Thus, Bourgeois alleges that LaPelusa came into possession of the money lawfully when Bourgeois gave it to him, but nowhere does Bourgeois allege that he demanded that this money be returned and was refused. Lacking this essential element, the allegations fail to state a claim for conversion.

58. Accordingly, the Court, in its discretion **GRANTS** Defendants' Motion to Dismiss Bourgeois' Sixth Claim for Relief, Conversion, and Bourgeois' Sixth Claim for Relief is **DISMISSED** without prejudice.[6]

59. Moving to the Seventh Claim for Relief, Auto Sales' claim for conversion suffers from the same failure to plead a rebuffed demand for return of its money as did Bourgeois' claim for conversion. Auto Sales alleges that it obtained an "SBA EIDL Loan of $43,000[,]" and that the money was originally placed in "[t]rust with one or more Defendants." (Compl. ¶ 21(n).) Then, LaPelusa, "complicit with Stevenson and Perry," wrongfully used the proceeds from the loan for the "benefit of AAG or LaPelusa." (Compl. ¶ 21(n).) Because Auto Sales pleads that it voluntarily

---

[6] Notwithstanding the Court's conclusion that this claim should be dismissed, "[t]he decision to dismiss an action with our without prejudice is in the discretion of the trial court[.]" *First Fed. Bank v. Aldridge*, 230 N.C. App. 187, 191 (2013).

transferred the money to Defendants' possession, to state a claim for conversion, Auto Sales must plead a demand for its return that was rejected. *See Hoch*, 63 N.C. App. at 483 ("demand and refusal are necessary to the existence of the tort" (citation omitted)). Given its failure to do so, the Court, in its discretion, **GRANTS** Defendants' Motion to Dismiss the Seventh Claim for Relief, Conversion, and Auto Sales' Seventh Claim for Relief is **DISMISSED** without prejudice.

E. Unjust Enrichment

60.     The Eighth Claim for Relief attempted by Plaintiffs is one for unjust enrichment.[7] Although it is asserted against all Defendants, as with Plaintiffs' claims for conversion, the factual allegations speak only to the enrichment of LaPelusa, Stevenson and Perry, and not AAG or The Pit Box. (*See* Compl. ¶¶ 21, 71.) Consequently, the entity Defendants' Motion to Dismiss the Alternative Eighth Claim for Relief, Unjust Enrichment, is **GRANTED**, and the Eighth Claim for Relief against AAG and The Pit Box is **DISMISSED** without prejudice.

61.     As for the unjust enrichment claim against the individual Defendants, "[i]n order to properly set out a claim for unjust enrichment, a plaintiff must allege that property or benefits were conferred on a defendant under circumstances which give rise to a legal or equitable obligation on the part of the defendant to account for the benefits received[.]" *Norman v. Nash Johnson & Sons' Farms, Inc.*, 140 N.C. App. 390, 417 (2000).  The elements of the claim are as follows:

---

[7] Despite Plaintiffs' characterization of the claim as one "in the alternative to the contract claims herein," the Court observes that no breach of contract claim has been asserted.

> First, one party must confer a benefit upon the other party. . . . Second, the benefit must not have been conferred officially, that is it must not be conferred by an interference in the affairs of the other party in a manner that is not justified in the circumstances. . . . Third, the benefit must not be gratuitous. . . . Fourth, the benefit must be measurable. . . . Last, the defendant must have consciously accepted the benefit.

*JPMorgan Chase Bank, Nat'l Ass'n v. Browning*, 230 N.C. App. 537, 541–42 (2013) (cleaned up).

62.    The facts that Bourgeois alleges to support a claim for conversion provide the basis for his unjust enrichment claim. (*See* Compl. ¶¶ 21(o), 71.) Bourgeois alleges that when he wrote a check for $160,288 and gave it to LaPelusa, he did not do so gratuitously. Instead, Bourgeois alleges that he intended to exchange the funds for either a promissory note or additional equity in The Pit Box. (Compl. ¶ 21(o).) The benefit is measurable, ($160,288), and is not alleged to have been conferred officially or by unjustified interference. Instead, the Complaint describes a business transaction. (*See* Compl. ¶ 21(o).) Finally, the allegation that LaPelusa, complicit with Stevenson and Perry, took the money satisfies the pleading requirement of a conscious acceptance of the benefit. (Compl. ¶ 21(o).) *See JPMorgan Chase Bank, Nat'l Ass'n*, 230 N.C. App. at 541–42.

63.    Likewise, the factual allegations that Auto Sales advances to support a claim for conversion provide the basis for its claim of unjust enrichment. (*See* Compl. ¶¶ 21(n), 71.) Auto Sales alleges that it secured a loan for $43,000, that the money was placed in trust with one or more of the Defendants, and that the money was then improperly used for the "benefit of AAG or LaPelusa." This wrongdoing was allegedly

committed by LaPelusa, complicit with Stevenson and Perry. (Compl. ¶ 21, 21(n).) Again, the money was not transferred officiously or gratuitously, it is measurable, it was consciously accepted, and it is alleged to have conferred a benefit on the individual defendants. The allegations state a claim for unjust enrichment as to both Bourgeois and Auto Sales.

64. Nevertheless, Defendants argue that this is a derivative claim and not one that can be brought directly by Auto Sales. (Defs.' Brief, 7–8.) The Court disagrees. Auto Sales alleges that LaPelusa, Stevenson, and Perry took money that was intended for its use and exploited it for other purposes without Plaintiffs' authorization. (Compl. ¶ 21, 21(n).) Viewing Plaintiffs' allegations in the light most favorable to them, the Court concludes that Plaintiffs have sufficiently pleaded facts that "property or benefits were conferred on a defendant under circumstances which give rise to a legal or equitable obligation on the part of the defendant to account for the benefits received." *Norman v. Nash Johnson & Sons' Far ms, Inc.*, 140 N.C. App. 390, 417 (2000), *disc. review denied*, 353 N.C. 378 (2001).

65. Therefore, the Court **DENIES** the individual Defendants' Motion to Dismiss Plaintiffs' Alternative Eighth Claim for Relief, Unjust Enrichment.

F. Injunctive Relief

66. Bourgeois' Ninth Claim for Relief, seeking injunctive relief, is better fashioned as a request for a remedy than as a claim. *See Revelle v. Chamblee*, 168 N.C. App. 227, 230 (2005) (a "preliminary injunction is an ancillary remedy, not an independent cause of action"). Given the existence of Bourgeois' claim for unjust

enrichment, foreclosing injunctive relief would be premature. *See Window World of St. Louis, Inc. v. Window World of Bloomington, Inc.*, 2021 NCBC LEXIS 88, at \*\*36 (N.C. Super. Ct. Oct. 6, 2021) (injunctive relief permitted to survive motion to dismiss as a potential remedy). Therefore, the Court, in its discretion, **DENIES** Defendants' Motion to Dismiss Bourgeois' Ninth Claim for Relief, Injunctive Relief.

G. Proposed Derivative Claims

67. The Court now turns to the sufficiency of Bourgeois' proposed amendment to add a derivative claim on behalf of The Pit Box and, although the proposal is difficult to decipher, perhaps a derivative claim on behalf of AAG. (*See* Prop. Am. Compl.) After considerable study, the Court concludes that the claims attempted in the proposed amendment are futile for lack of standing, and the Motion to Amend should be denied. *See Window World of St. Louis, Inc.*, 2015 NCBC LEXIS 79, at \*\*18 ("Reasons justifying denial of an amendment include . . . futility of [an] amendment [.]").

68. As Plaintiff, it is Bourgeois' burden to prove standing. *Blinson v. State*, 186 N.C. App. 328, 333 (2007). AAG is a corporation. The party bringing a derivative action on behalf of a corporation must be a shareholder. *See* N.C.G.S. § 55-7-41. There is no allegation that Bourgeois is, or ever was, a shareholder of AAG. His attempted derivative action on AAG's behalf fails on that basis. *Robbins v. Tweetsie R.R., Inc.*, 126 N.C. App. 572, 577 (1997) ("a derivative action requires that the shareholder bringing such an action have proper standing to bring the action").

69.     Additionally, Bourgeois failed to make the requisite pre-suit demand on AAG. "[E]xhaustion of intracorporate remedies (that is, 'demand') is a procedural prerequisite to the filing of a derivative action in North Carolina." *Alford v. Shaw*, 320 N.C. 465, 471 (1987). Although the Complaint asserts that a demand was made, the demand letter referenced in the Complaint and attached to Defendants' Answer does not include a demand against AAG. (Defs.' Answer Ex. E, ECF No. 17.) The only demand attempted was on The Pit Box. (Defs.' Answer Ex. E ("Pursuant to NCGS §57D-8-01 and other relevant statutes, Shane Bourgeois, a Member of The Pit Box, LLC as of December 16, 2020 *makes written demand on The Pit Box, LLC* to take suitable action against Jim LaPelusa and Brian Perry and Ralph Stevenson" (emphasis added)).) Without the required pre-suit demand, Bourgeois lacks standing to pursue a derivative action on behalf of AAG. *See* N.C.G.S. § 55-7-41.

70.     Bourgeois' proposed derivative claim on behalf of The Pit Box fares no better. The demand made on behalf of The Pit Box lacks the specificity and clarity that the law requires. "The pre-suit demand required by section 57D-8-01(a) 'must be made with sufficient clarity and particularity to permit the [LLC] . . . to assess its rights and obligations and determine what action is in the best interest of the company.'" *Kane v. Moore*, 2018 NCBC LEXIS 157, at *14 (N.C. Super Ct. Nov. 26, 2018) (quoting *Miller v. Burlington Chem. Co.*, 2017 NCBC LEXIS 6, at *29 (N.C. Super. Ct. Jan, 27, 2017)). "Such demand should be clear with respect to the claims it requests that the [LLC] assert and which of the [members] those claims should be

asserted against." *Greene v. Shoemaker*, 1998 NCBC LEXIS 4, at \*\*17 (N.C. Super. Ct. Sept. 24, 1998).

71.     Clarity and specificity in a pre-suit demand are essential because the purpose of the demand is to "allow[ ] the [LLC] the opportunity to remedy the alleged problem without resort to judicial action." *Alford v. Shaw*, 72 N.C. App. 537, 540 (1985), *modified and aff'd*, 320 N.C. 465 (1987). To assess the sufficiency of a pre-suit demand, courts compare the allegations of the complaint, (or the amendment in this case), with the actions demanded pre-suit. *See Miller*, 2017 NCBC LEXIS 6, at \*31 (comparing "each derivative claim asserted to the actions demanded"); *Greene v. Shoemaker*, 1998 NCBC LEXIS 4, at \*\*9 (N.C. Super. Ct. Sept. 24, 1998) ("In determining whether the demand requirement has been met the Court must compare the derivative claims asserted in a complaint against the specific demands a plaintiff has made prior to filing suit."). A comparison in this case reveals that Bourgeois failed to satisfy this statutory requirement for standing.

72.     The demand letter specifically lists the following alleged wrongs:

   a. conducting a Meeting without prior Notice to Mr. Bourgeois on or about December 16, 2020,
   b. attempting to dissolve [The] Pit Box,
   c. publishing defamatory statements against Mr. Bourgeois,
   d. any changes of accounts,
   e. any failure to pay Mr. Bourgeois,
   f. using the legal services of Ralph Stevenson without a suitable disclosure of conflict of interest,
   g. hiring legal counsel at company expense if such occurred,
   h. and any other actions of [The] Pit Box damaging to the LLC or to Mr. Bourgeois[.]

(Defs.' Answer Ex. E.)

73.    Despite listing these grievances, nowhere does the letter specify what action Bourgeois is seeking.  In some instances, even his complaints lack the required specificity.  A demand to take "suitable action" regarding "any change of accounts," for example, is not sufficiently specific to allow The Pit Box to assess its rights and obligations. (Defs.' Answer Ex. E.)  *See Kane*, 2018 NCBC LEXIS 157, at *14.   A complaint against Defendants for "using the legal services of Ralph Stevenson without a suitable disclosure of conflict of interest," provides no specifics about the legal services provided or the manner in which the alleged conflict arose. (*See* Defs.' Answer Ex. E.)  Compounding the problem, the demand letter includes personal claims that Bourgeois might have brought directly and that cannot be the basis for a derivative action. (Defs.' Answer Ex. E ("publishing defamatory statements against Mr. Bourgeois" and "any failure to pay Mr. Bourgeois").)

74.    The lack of clarity and specificity in the pre-suit demand becomes apparent when it is compared to the proposed amendment.  *See Greene*, 1998 NCBC LEXIS 4, at **16–18.   The proposed amendment includes over thirty-five detailed factual allegations, while the demand lists only eight short grievances. (*See* Defs.' Answer Ex. E; Prop. Am. Compl.)  Without more specificity in the pre-suit demand, The Pit Box cannot have been expected to assess its rights and obligations, and importantly, to determine what action was in the best interest of the company.  *See Kane*, 2018 NCBC LEXIS 157, at *14.  Consequently, without a proper pre-suit demand, Bourgeois lacks standing to assert a derivative claim on behalf of The Pit

Box. *See Alford*, 320 N.C. at 471 (proper pre-suit demand is a "procedural prerequisite to the filing of a derivative action in North Carolina").

75. Accordingly, the Court, in the exercise of its discretion, DENIES Bourgeois' Motion to Amend.

## V. CONCLUSION

76. WHEREFORE, the Court hereby ORDERS as follows:

    a. Defendants' Motion to Dismiss is GRANTED as to Plaintiffs' First Claim for Relief, Breach of Fiduciary Duty, and the First Claim for Relief is hereby DISMISSED with prejudice.

    b. Defendants' Motion to Dismiss is GRANTED as to Plaintiffs' Sixth and Seventh Claims for Relief, Conversion, and the Sixth and Seventh Claims for Relief are hereby DISMISSED without prejudice.

    c. Bourgeois has voluntarily dismissed without prejudice his Fourth Claim for Relief as to Stevenson, and Defendants' Motion to Dismiss the Fourth Claim for Relief is MOOT;

    d. Stevenson's Motion to Dismiss as to Bourgeois' Fifth Claim for Relief, Conversion to Economic Interest Holder, is GRANTED and the Fifth Claim for Relief is DISMISSED with prejudice.

    e. Defendants' Motion to Dismiss Plaintiffs' remaining claims is DENIED.

    f. Bourgeois' Motion to Amend is DENIED.

IT IS SO ORDERED, this the 23rd day of September, 2022.


/s/ Julianna Theall Earp
_____
Julianna Theall Earp
Special Superior Court Judge
 for Complex Business Cases